**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANET BRUNERMER and | ) | |
| SCOTT BRUNERMER, | ) | |
| | ) | |
| Plaintiffs, | ) | 2:21-cv-00740 |
| | ) | |
| v. | ) | |
| | ) | |
| BOROUGH OF APOLLO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

**Mark R. Hornak, United States District Judge**

Before the Court are two Motions to Dismiss, each seeking to dismiss portions of the Second Amended Complaint in this matter. (ECF Nos. 125, 127). Defendants Scott Andreassi, Richard Craft, Cynthia McDermott, Deanne Shupe, Mark Tarle, Brenda Troup, and the Borough of Apollo (PA) ("Borough") move to dismiss Counts IV, VI, and IX for failure to state a claim. The Borough of Apollo and Ms. Troup also move to dismiss Count VII for the same reason. Defendant Grant Kanish separately moves to dismiss Count IX for failure to state a claim.

The Court previously requested and received supplemental briefing from the parties on the question of ripeness and the application of one or more abstention doctrines. (ECF Nos. 172, 173, 174). Since then, the facts of this case have continued to develop, Plaintiffs are no longer represented by counsel, and there have been an array of additional interactions between various of the parties regarding land use permit activities at the Borough level and judicial eminent domain proceedings in state court, all as detailed in several new filings on the docket. (ECF Nos. 200, 201, 207, 208, 219). These new filings also include Plaintiffs' Motion to Enforce Prior Orders, For Further Relief, And For Sanctions Regarding Permit Record And Permit Packet Access, (ECF No. 213), and Plaintiff's Motion for Leave to File an Amended Complaint, (ECF No. 217).

1

For the reasons set out below, the Motions to Dismiss are GRANTED. Plaintiffs will be granted leave to file a Third Amended Complaint, consisting of a "short and plain statement" for relief in compliance with Federal Rule of Civil Procedure 8 and the matters set out in this Opinion. Further, due to the evolving events surrounding pending state and local administrative and judicial proceedings directly related to the balance of the claims presented here, the Court will DISMISS WITHOUT PREJUDICE the remaining Counts I, II, III, V, and VIII which are directly related to events involved in those proceedings and as to which it appears that material events have evolved. Plaintiffs will be allowed to include any new allegations relative to such claims and related to such developments in this case in their Third Amended Complaint, but if and only if such are claims plausibly supported by law and the facts. And based on the mutual consent of the parties, the claims asserted at Count VII of the Second Amended Complaint will be DISMISSED WITH PREJUDICE.

**BACKGROUND**

Plaintiffs Janet and Scott Brunermer bring this action challenging various actions by the Borough of Apollo and its officers and officials related to the Brunermers' purchase of a former church building and land in the Borough of Apollo, Pennsylvania.[1]

To say that relations between the Plaintiffs and local officials are strained would be an understatement.

The Brunermers make extensive factual allegations, but the most relevant are, broadly, fourfold: (1) that the Borough was not the rightful owner or user of a strip of land abutting the Brunermers' property commonly  referred to as an "alley" and has unlawfully interfered with the

---

[1] Unless otherwise noted, the following facts are taken from the Second Amended Complaint. (ECF No. 120).

2

Burnermers' use and enjoyment of that strip of land; (2) that the Borough's use of a Municipal Prior Approval Form ("MPAF") as part of its land use regulatory processes is an impermissible implementation of Pennsylvania law and has been irrationally applied to them; (3) that the Borough's Vacancy Ordinance is unlawfully vague; and (4) that the Borough has violated several of the Brunermers' federal constitutional rights in retaliation against the Brunermers' attempts to rezone/modify the use of their more recently acquired property, a former church they hope to use as a soap making/sales facility.

The first set of facts relates to a strip of land which abuts Cunningham Way, a roadway in the Borough of Apollo. Central to every dispute in this case is a parcel of land that included an old church purchased by the Brunermers in 2017. The Brunermers allege that their purchase of this parcel included that contested strip of land. The Borough acquired a temporary easement on this strip of land in 2009 for sewer work, and between then and the filing of this lawsuit paved Cunningham Way. The Brunermers say that this paving encroached onto that strip of land which they also say is part of their property. They subsequently employed a surveyor and a contractor to erect a fence along what the surveyor identified as their property line, which traversed the now-contested land. The Borough supposedly sent Defendant Mark Tarle, a member of the Apollo Borough Council, to the scene to stop the fence from being built. Mr. Tarle told the contractors to cease work because the fence impeded the public use of Cunningham Way as a roadway. A disturbance ensued, culminating in the arrival of the Pennsylvania State Police.

The incident involving the fence and Cunningham Way is the subject of Count I brought under the federal Takings Clause and Count II under the parallel provisions of the Pennsylvania state constitution. The Borough filed a status report with the Court on March 20, 2024, informing this Court of the initiation of eminent domain proceedings regarding this strip of land in the Court

3

of Common Pleas of Armstrong County, Pennsylvania. (ECF No. 176). Based on information shared with the Court both in a recent status conference with the parties present and through multiple filed status reports, it appears that those proceedings had been adjudicated by the local Court of Common Pleas but have then bounced up and down in the state court appellate process and have yet to reach a final disposition.

The second set of facts involves the Brunermers' attempts to change the property's zoning (or more precisely, receive a land use variance/exception) to operate their business for retail soap sales on their acquired property, rather than the property's former use as a church. The Borough required the Brunermers to submit a Municipal Prior Approval Form ("MPAF") to Bureau Veritas — a private entity contracted by the Borough that administers change of use and occupancy permits on behalf of the Borough — in order to effectuate the Brunermers' desired change in use.

The Brunermers say that they have submitted at least fourteen (14) of these forms for approval. They go on to say that each has been rejected for several stated reasons, including no signature on the form from the Borough, issues with the local Vacancy Ordinance and property inspections, the statement of the new use on the form, insufficient information about the use of space, and disputes over the required amount of parking. (*See also* ECF Nos. 166, 170).

The Brunermers argue, in effect, that the goalposts for a zoning change/use authorization have constantly changed and that the Borough and Bureau Veritas have continually produced new paperwork for them to fill out that was not previously required and has no basis in law. They also protest a lack of sufficient response to their "Right-to-Know" requests made under Pennsylvania's Open Records Law.

The Brunermers say that the difficulty they experienced in seeking approval for their desired use of the property is the fruit of a wide-ranging conspiracy between and among a number

of Borough officials, evidenced by emails saying that the Brunermers could not get a vacancy waiver because they did not have an occupancy permit and the business was not permitted in the Borough. Along with pointing fingers at the Borough and Bureau Veritas, they identify various individual Borough officials they allege were involved in land use approvals as part of the conspiracy (the "Borough Defendants"), including Scott Andreassi, then the Borough Open Records officer and who currently serves as the Borough's Solicitor; Richard Craft, the Borough's professional engineer; Cynthia McDermott, then the Borough Manager; Deanna Shupe, the Borough Secretary/Treasurer; Mark Tarle, a member of the Borough Council; and Brenda Troup, the Borough Zoning Officer. They also point to Bureau Veritas itself and one of its building code officers, Grant Kanish, as part of the conspiracy. They bring four Counts related to these permitting and zoning problems: Count III, a substantive due process claim; Count V, a regulatory taking claim; Count VI, an equal protection claim; and Count IX, a civil rights conspiracy claim.

The third set of facts relates to the Borough's Vacancy Ordinance. The Brunermers received a letter that their property had been adjudged vacant under the Borough's Vacancy Ordinance on January 24, 2018, which would require a vacancy inspection originally scheduled for January 30, 2018. They attended a virtual Borough council meeting on January 25th, where they asked why their property had been deemed vacant and pointed out that a neighboring property was not considered vacant despite the owner's death in 2014. The only answer they allegedly received was: "We'll determine who's vacant." (ECF No. 120 ¶ 78). The inspection scheduled for January 30th did not take place, and the Borough invoiced the Brunermers $100 for missed vacancy inspections. The Brunermers continued to seek clarification from the Borough, including a list of vacant properties elsewhere in the Borough, copies of vacancy inspection checklists, and information regarding the vacancy status of their property prior to their purchase of it. The Borough

refused the request for a vacant property list and the Brunermers say they never received clarification about the requirements for the application of the Vacancy Ordinance both generally and as to them.

After seeking the advice of a lawyer, in July of 2018 the Brunermers filled out vacancy documents received from the Borough stating they owned no vacant property. They were then criminally charged locally with failure to register a vacant building, for which only Janet Brunermer was eventually found guilty. The Brunermers argue that the assessment of a violation of the Vacancy Ordinance is impermissibly subjective as indicated by the fact they were never able to get a clear answer on what constitutes vacancy, including through a series of Right-to-Know (Open Records Law) requests for which they allegedly never received a sufficient response. The disagreement regarding the property's vacancy classification appears to have been a significant obstacle to getting the use of the former church property they sought to be approved. The Brunermers seek to enjoin the enforcement of Vacancy Ordinance for impermissible vagueness in Count VIII.

The final set of facts involves two allegedly unlawfully retaliatory actions taken by the Borough against the Brunermers. The Brunermers also attended a virtual Borough council meeting in January of 2018, where they discussed their concerns about the Vacancy Ordinance. They say that there was a problem with their microphones, or possibly that the council members conspired to ignore what they said into the microphones, and they were only able to use the chat function and did not receive responses to their missives from the Borough officials participating in that meeting. They say this was a violation of their First Amendment rights, alleging a retaliatory denial of the right to participate in a public meeting in Count IV.

6

Second, on October 15, 2019, Ms. Troup and the Borough police chief arrived at the Brunermers' property for a vacancy inspection, which the Brunermers say was not scheduled. When Ms. Brunermer asked for a warrant authorizing governmental access to the property, Ms. Troup and the Borough police chief left the property. The Borough then invoiced the Brunermers for a missed inspection, which the Brunermers allege in Count VII was in retaliation for their assertion of their Fourth Amendment rights

Those in summary were the facts asserted when Plaintiffs filed their Second Amended Complaint and Defendants filed their Motions to Dismiss. Since then, the events surrounding the case have continued to develop. The Brunermers have elected to proceed without counsel and pursue this case *pro se*. (ECF No. 206). The state court eminent domain litigation regarding title to the strip of land that abuts Cunningham Way began and concluded in the local Court of Common Pleas, but then was appealed to the Commonwealth Court of Pennsylvania, was then remanded by that appellate court to the local Court of Common Pleas for further proceedings and has now again been appealed to the Commonwealth Court. (ECF Nos. 219-3, 219-4, 219-9). And the Brunermers have again attempted to secure the requisite zoning permissions to operate their soap business from the relevant Borough offices/officials, leading to additional conflicts between the parties and resulting in the filing of a new Motion by the Brunermers to address their newest grievances relative to the conduct of the Borough and its officials. (ECF No. 213). To consolidate the now sprawling factual record, Plaintiffs have filed a Motion for Leave to File an Amended Complaint. (ECF No. 217).

## **DISCUSSION**

Both pending Motions seek dismissal of certain claims pursuant to Rule 12(b)(6). A Motion to Dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v.*

*Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In reviewing a Motion to Dismiss under Rule 12(b)(6), the Court conducts a two-part analysis: first, the Court separates the factual and legal elements of a claim, disregarding any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Then, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. City of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, the Court need not accept as true any unsupported conclusions or inferences nor any "threadbare recitals of elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As such, a plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In this case, the Borough and various officers move to dismiss Counts IV, VI, VII, and IX, all for failure to state a claim. Mr. Kanish moves to dismiss Count IX for the same reason. The individual Defendants also assert coverage of qualified immunity. As a preliminary matter, the Brunermers have agreed to dismiss Count VII with prejudice, which was based on alleged retaliation for asserting their Fourth Amendment rights, (ECF No. 134-1 at 2 n.1), and thus Count VII will be so DISMISSED WITH PREJUDICE.

## I.  Defendants' Motions to Dismiss

The individual Borough Defendants argue that they are entitled to qualified immunity as to any federal claims brought against them for money damages in their individual capacities. The Brunermers do not contest that qualified immunity generally could apply in this case but argue

that the Borough Defendants violated their clearly established federal rights and that qualified immunity is not actually applicable to the federal claims against those Defendants.

A state or municipal actor is protected from lawsuits seeking monetary damages by qualified immunity when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating the qualified immunity defense, the Court must decide if a constitutional right has been violated, and if that right has been clearly established; those questions may be answered in either order. *Pearson v. Callahan*, 55 U.S. 223, 232–33 (2009). The key question is whether the challenged action was objectively reasonable based on "legal rules that were clearly established at the time." *Wilson v. Layne*, 526 U.S. 603, 614 (1999).

A right is clearly established when "government officials have 'fair and clear warning' that their conduct is unlawful." *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014) (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001)). Such a warning exists when either the Supreme Court or a "robust consensus" of the regional Courts of Appeals have produced decisions announcing analogous conduct is unlawful. *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016). A district court's determination of the nature of the claim made and whether the involved right was allegedly impinged may not be at a high level of generality but must relate to the matters alleged to the degree that a public officer would be on fair notice that their actually involved conduct had been previously ruled by controlling judicial authority to be unconstitutional. *See McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001).

Here, the parties dispute whether the rights at issue are clearly established, and in the case of the Borough Defendants, if any such rights were violated at all. The Borough Defendants claim that there is no evidence that any clearly established rights are at issue; the Brunermers say that

9

every claim they bring is based on a violation of clearly established law. For the reasons discussed specifically in regard to each claim below, the Court does not conclude that the Plaintiffs have alleged violations of clearly announced constitutional rights (or in actuality have stated actionable claims at all), at least not on the record as it currently stands. So those claims will be dismissed without prejudice, and with one final opportunity for amendment, for the reasons noted below.

Given that such further amendment will be permitted (one last time) the Court will not resolve the issue of qualified immunity here and now. The Third Circuit has said that "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002). While qualified immunity should be decided "at the earliest possible stages of litigation," *id.* at 277, "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236. Because further developed allegations may plausibly demonstrate that a clearly established constitutional right was or was not violated by one or more Defendants, amendment will be permitted as to the claims against individual Borough Defendants as to whom that doctrine might apply.

The claims at Counts IV, VI, and IX against all Defendants, including Defendants Scott Andreassi, Richard Craft, Cynthia McDermott, Deanna Shupe, Mark Tarle, and Brenda Troup will be DISMISSED WITHOUT PREJUDICE and with leave to amend. This result as to each such claim is addressed in turn below.

    *a. First Amendment claim*

Count IV alleges that the Borough, Ms. Shupe, and Mr. Tarle purposely denied the Brunermers the right to speak at a Borough Council meeting in retaliation for constitutionally protected conduct of the Brunermers. The Borough and the Borough Defendants argue that the

Brunermers' allegations show, at most, that the Borough purposefully ignored their speech at the meeting — not that the Council restrained their ability to actually speak or retaliated against them in any way. The Brunermers argue that their speech was prohibited by the named officials in retaliation for their attempts to resolve their zoning disputes, and that such a denial of the opportunity to speak would deter a person of reasonable firmness from exercising their Constitutional rights, including to petition the local government as to land use matters. In the alternative, the Brunermers assert a general suppression of speech claim.

The Brunermers argue that their speech at Borough Council meetings was protected, and that the Borough retaliated against them for that First Amendment–protected conduct by stopping them from actually speaking. However, the Brunermers do not plausibly allege that they were *completely* prevented from speaking at these meetings; instead, they allege only that restrictions were placed upon their ability to do so. And they do not sufficiently allege that those restrictions targeted either the content or viewpoint of *their* speech, rather than being reasonable and generally applicable to all meeting attendees.

The First Amendment protects the freedom of speech and the right to petition the government for redress of grievances. U.S. Const. amend. I. In a limited public forum such as a local council meeting, the government may restrict the time, place and manner or speech, so long as the restrictions are reasonable and serve the purpose for which the forum was created. *Galena v. Leone*, 638 F.3d 186, 199 (3d Cir. 2011). To successfully plead a claim for retaliation against the exercise of First Amendment rights, a plaintiff must allege (1) their participation in constitutionally protected conduct, (2) subsequent retaliatory action sufficient to deter a person of ordinary firmness from exercising those rights, and (3) a causal link between the conduct and the alleged retaliation. *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

The restrictions on speech at the meetings as pled here could plausibly be reasonable and viewpoint-neutral. A requirement that questions be submitted in advance could reasonably aid in the efficient and focused discussion of the meetings. *See, e.g.*, *Duff v. City of Philadelphia*, No. 14-6079, 2015 WL 4644138, at *3 (E.D. Pa. Aug. 4, 2015) (requirement that attendees sign in and indicate the agenda item they wished to speak on at City Council meeting was reasonable restriction in light of the forum); *Miller v. N. Belle Vernon Borough*, No. 8-cv-1345, 2010 WL 4388069, at *5 (W.D. Pa. Oct 29, 2010) (time limits and policy against interruption presumptively reasonable restrictions at public meeting so long as applied in a viewpoint-neutral manner).

While the Brunermers claim they were the only meeting participants subject to a pre-meeting question submission process, they make that claim only a few sentences after alleging that this was a policy that applied to all meeting attendees. (ECF No. 120, at ¶¶ 206, 208.). Given that contradiction, there are not sufficient facts pled for the Court to plausibly infer that the Borough specifically targeted the Brunermers or their speech, as opposed to enforcing a universal policy that applied regardless of the speaker's viewpoint. *Cf. Dorley v. S. Fayette Twp. Sch. Dist.*, 129, F. Supp. 3d 220, 233 (W.D. Pa. 2015) (contradictory allegations in complaint insufficient, when taken as true, to survive motion to dismiss).

Further, the Brunermers cannot state a claim based on a lack of a meaningful response to their concerns alone. Importantly, "the individual right to petition does not 'require government policymaker to listen or respond to individuals' communications on public issues.'" *Kerchner v. Obama*, 612 F.3d 204, 209 (3d Cir. 2010) (quoting *Minn. St. Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984)). So while their speech itself is protected, the Brunermers "have no constitutional right as members of the public to a government audience for their policy views." *Knight*, 465 U.S. at 286. The Brunermers seem to allege that they were, at minimum, successfully

12

able to express their views via written messages and via the chat function at the virtual meetings. If they were successfully able to engage in their speech directed to the Borough officials as part of a virtual meeting as they allege; that suffices for purposes of the First Amendment unless they can demonstrate that these requirements were retaliatory. The Brunermers' allegations of retaliation, however, merely repeat that their comments were ignored, not that they were not allowed to be made. (*See* ECF No. 134-1, at 7.) But their comments being ignored does not amount to a denial of the right to participate in the meeting. And the Brunermers do not allege any causal connection between their speech and the submission requirements themselves. Therefore, they have not plausibly shown that any requirement to submit questions in advance was either retaliatory or a general suppression of speech in violation of the First Amendment.

Thus, Count IV is DISMISSED WITHOUT PREJUDICE.

### b. *Equal Protection claim*

Count VI is an equal protection "class of one" claim alleging that the Borough, Bureau Veritas, Mr. Kanish, Ms. Shupe, Mr. Andreassi, and Ms. McDermott have denied the Brunermers equal protection of the laws because they have not been treated the same as similarly situated landowners and properties in obtaining land use permitting. The Brunermers charge these Defendants with applying and enforcing the MPAF and other permitting requirements against them in a discriminatory fashion.

The Equal Protection clause "is not a command that all persons shall be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Att'y Gen. of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). For a successful "class of one" claim, a plaintiff must allege that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so

intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). To be similarly situated for equal protection purposes, the comparable parties must be alike "in all relevant aspects." *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020). Because courts must "isolate the factor allegedly subject to impermissible discrimination," a successful equal-protection challenge will allege "more than broad generalities in identifying a comparator." *Stradford v. Sec'y Pa. Dep't of Corrs.*, 53 F.4th 67, 74 (3d Cir. 2022) (internal quotations omitted).

Of the three requirements necessary to make out a class of one claim, the allegations in the Second Amended Complaint show, at most, that the Borough intentionally treated the Brunermers differently from others who sought permits. But that alone is insufficient to show that those others were similarly situated or that the Borough did not have a rational basis to treat the Brunermers differently. The Brunermers provide a bare list of businesses that they say are similarly situated and have not been subject to the same requirements. (ECF No. 120, at ¶ 170.) They do not elaborate on how those businesses are alike, and their response to that argument in the Motion to Dismiss is that these businesses are all within the Borough of Apollo. (ECF No. 134-1, at 14.) That geographic generalization is grossly insufficient to show that they are alike in all relevant aspects; instead, the Brunermers must allege specifics as to why these businesses are similarly situated as to the Borough's zoning requirements. *See Child.'s Health Def. v. Rutgers*, 93 F.4th 66, 85 (3d Cir. 2024). Without those allegations, the Court cannot conclude that the Second Amended Complaint plausibly shows that there was no rational basis for the denials, as is required to successfully allege a class of one claim.

Thus, Count VI is DISMISSED WITHOUT PREJUDICE.

14

c. *Civil Rights Conspiracy claim*

Finally, Count IX alleges a civil rights conspiracy claim against the Borough and all other Defendants. To allege a conspiracy to deprive a person of civil rights, the plaintiff must allege an agreement to deprive any person of their rights, an overt act in furtherance of that agreement, and an injury or deprivation as a result. *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001). The plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184–85 (3d Cir. 2009). There must be allegations showing that the named defendants "somehow reached an understanding" to deny the plaintiffs their rights. *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993). When direct evidence of an agreement is not available, as may frequently be the case, circumstantial evidence can be used to show the necessary meeting of the minds. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018). Mere conclusory statements that a conspiracy or agreement existed are not enough; there must be "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.

The Brunermers point to three allegations that they say lead to an inference of a conspiracy: first, alleged concerted action to prevent the Brunermers from obtaining the necessary inspections and permitting; second, the use of the MPAF; and third, "numerous acts that interlaced in denying" the Brunermers the use of their property, including various denials of the MPAF and refusal to respond to the Brunermers' requests. (ECF No. 134-1, at 15.) Each of these allegations may demonstrate that the Borough and its agents acted in concert, but mere parallel behavior is insufficient unless it tends to exclude the possibility of a non-conspiratorial reason for concerted action. *See Twombly*, 550 U.S. at 554. The fact that various agents of the Borough denied the Brunermers' change in zoning/property use does not show a conspiracy by itself. It may simply

15

show that the change in zoning was not consistent with Borough policy, and the Boroughs' denials were entirely proper. The use of the MPAF and other permitting denials similarly shows only that each defendant took similar action, not an illegal agreement. And alleging that various individual actions were interlaced does not indicate how, when, or why the conspiracy came into existence or that it had an impermissible purpose and goal. *See Great W. Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 179 (3d Cir. 2010). The non-conclusory allegations in the Second Amended Complaint, taken as true, do not lead to an inference of an agreement to violate the Brunermers' Constitutional rights and therefore cannot make out a claim of conspiracy.

Count IX is therefore DISMISSED WITHOUT PREJUDICE.

## II. Amendment

Under controlling Third Circuit law, "a district court must permit . . . curative amendment" of a complaint that is "vulnerable to 12(b)(6) dismissal" unless "an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 36. The Court concludes that leave to amend must still be granted in this case because doing so would not be inequitable nor obviously futile at this stage. No facts have been alleged here that make it obvious that the Brunermers cannot plausibly state a claim such that leave to amend would be futile as a matter of law. *See, e.g.*, *Kalomiris v. Monroe Cnty. Syndicate*, No. 1:08-cv-539, 2009 WL 73785, at *7–10 (W.D. Pa. Jan. 8, 2009) (denying leave to amend under immunity doctrines and statute of limitations). This is especially true given the numerous developments that have occurred in the almost four years since the filing of the Second Amended Complaint.

Plaintiffs' Motion for Leave to File an Amended Complaint, (ECF No. 217), is GRANTED. However, the Court declines to adopt the Proposed Third Amended Complaint that is attached as an exhibit to that Motion. (ECF No. 217-1). That Proposed Third Amended

Complaint is 200 pages long, and contains 1,410 paragraphs, making it almost four times the length of Plaintiffs' Second Amended Complaint. A complaint of such length is not remotely close to complying with Rule 8's requirement of a "short and plain statement" of claims asserted. Thus, the Proposed Third Amended Complaint will not be permitted to go forward. Plaintiffs are directed to file a Third Amended Complaint that fully complies with Rule 8.

Finally, the Court advises that the parties should expect that the Brunermers will not be granted leave to amend again, given that the Plaintiffs will have had four pleading opportunities (original Complaint and three amendments), along with the benefit of numerous additional status reports, conferences, and briefings. The Plaintiffs should therefore assume, absent unforeseen circumstances, that the amendment opportunity here will be the last, best, and final such opportunity.

### III. Plaintiffs' Remaining Claims

What remains in the Second Amended Complaint are Counts I, II, III, V, and VIII. The claims in each of these Counts are either based on or are sufficiently intertwined with state and local administrative and judicial processes regarding zoning changes/approvals and eminent domain proceedings that have evolved significantly since the filing of the Second Amended Complaint. To permit the sound and efficient resolution of claims and defenses in light of these developments they must be pled again (if at all) in the Third Amended Complaint authorized by this Order and be based on the current state of affairs, incorporating all relevant factual allegations necessary to plausibly state a claim upon which relief can be granted. Thus, Counts I, II, III, V, and VIII are DISMISSED WITHOUT PREJUDICE.[2]

---

[2] In these regards, the Plaintiffs are expressly cautioned that to the extent their claims are based upon or related to the operation of local/state land use regulations/proceedings, and/or state court eminent domain proceedings, the advancement of such claims in this litigation in this federal court

Any outstanding assertions of actionable liability by one or more Defendants and which are the subject of other Motions currently pending on the docket must be addressed in Plaintiffs' Third Amended Complaint, or not at all. To avoid duplicity, the Court will dismiss the claims at Counts I, II, III, V, and VII without prejudice in light of Plaintiffs' being granted leave to file their Third Amended Complaint as to the claims dismissed in response to the Motions to Dismiss. This is the equivalent of the Court ordering a "more definite statement" of such claims as otherwise permitted by Federal Rule of Civil Procedure 12(e) and to in essence "reset" this civil action for its effective disposition/resolution based on the world as it now exists. *See Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (advising district courts to "keep the case moving – if the claim is unclear, by requiring a more definite statement under Rule 12(e)"); *Anderson v. Dist. Bd. of Trs. Of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996). Thus, Plaintiffs' Motion to Enforce Prior Orders, For Further Relief, And For Sanctions Regarding Permit Record And Permit Packet Access, (ECF No. 213), is also DISMISSED WITHOUT PREJUDICE.

## CONCLUSION

For the reasons set forth above, the Court orders as follows:

- The Motions to Dismiss, (ECF Nos. 125, 127) are GRANTED:

  o Counts IV, VI, and IX are DISMISSED WITHOUT PREJUDICE.

  o Count VII is DISMISSED WITH PREJUDICE by stipulation of the parties.

---

may not amenable to resolution either now or in the future, based on the application of the *Rooker-Feldman* Doctrine barring what could be considered to effectively be an "appeal" or attempt to seek review in federal court of certain actions of a state court, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005), and/or the application of one or more federal court abstention principles. *See Harris v. Twp. Of O'Hara*, 282 F. App'x 172, 175 (3d Cir. 2008) (holding that challenges to land-use decisions "may not proceed unless the local authority has been given the opportunity to render a final decision regarding the challenged zoning ordinance"); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813-17 (1976) (describing different abstention doctrines).

- Counts I, II, III, V, and VIII are DISMISSED WITHOUT PREJUDICE in light of Plaintiffs being granted leave to file a Third Amended Complaint. They may be reasserted in that pleading, but only if supported by plausible facts and applicable law, and in conformity with Federal Rule of Civil Procedure 11.

- Plaintiffs' Motion to Enforce Prior Orders, For Further Relief, And For Sanctions Regarding Permit Record And Permit Packet Access, (ECF No. 213), is DISMISSED WITHOUT PREJUDICE. Plaintiffs are directed to include any allegations and claims that are the subject of this Motion in their Third Amended Complaint if appropriate and permissible under the standards set out above.

- Plaintiffs' Motion For Leave to File Amended Complaint, (ECF No. 217), is GRANTED IN PART. However, Plaintiff's Proposed Third Amended Complaint, (ECF No. 217-1) is STRICKEN for violating Federal Rule of Civil Procedure 8. Plaintiffs are directed to file a Third Amended Complaint containing a "short and plain statement" of their claim entitling them to relief within twenty-one (21) days of the date of this Order. The Plaintiffs are specifically cautioned that this federal court is not the arena for the assertion and resolution of generalized grievances regarding local governmental officials but is instead the forum for the resolution of claims properly brought in this court of limited federal jurisdiction. Any Responsive filing as to a Third Amended Complaint made pursuant to Federal Rule of Civil Procedure 12 shall be filed by the Defendants within twenty-one (21) days of the date of the filing of the Third Amended Complaint.

s/ Mark R. Hornak
Mark R. Hornak
United States District Judge

Dated:  July 9, 2026

19