**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANET BRUNERMER and SCOTT BRUNERMER, | ) | CIVIL DIVISION |
| | ) | |
| | ) | No: 2:21-cv-740 |
| Plaintiffs, | ) | |
| | ) | US Chief District Judge Mark R. Hornak |
| v. | ) | |
| | ) | |
| BOROUGH OF APOLLO, *et al.*, | ) | **ELECTRONICALLY FILED** |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

**APOLLO BOROUGH DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT [ECF 231] PURSUANT TO Fed. R. Civ. P. 12(b)(6)**

AND NOW, come Defendants, BOROUGH OF APOLLO, CYNTHIA MCDERMOTT, MARK TARLE, DEANNE SHUPE, BRENDA TROUP, RICHARD CRAFT and SCOTT ANDREASSI, by and through their counsel, MARSHALL DENNEHEY, P.C. and TERESA O. SIRIANNI, ESQUIRE, and file the within BRIEF IN SUPPORT OF MOTION PURSUANT TO Fed. R. Civ. P. 12(b)(6) TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT [ECF 231].

## I. FACTUAL BACKGROUND

Plaintiffs' Third Amended Complaint again rehashes alleged events following Plaintiffs' purchase of a property at 719 North Warren Avenue in Apollo Borough on or about April 6, 2017. The Third Amended Complaint makes extensive factual allegations, consisting of over 75 pages not including exhibits (which total an additional 133 pages) and covering nine years since the purchase of the subject property. Almost all of the allegations are untimely as they date back well beyond two years and/or appear to assert discrete acts allegedly pleaded as "background, notice,

motive, *custom*, *causation* or context" yet are asserted as bases for each alleged cause of action. *See* Third Amended Complaint ("TAC") at ¶ 33 [ECF 231] (emphasis added), and *see e.g.* ¶¶ 197, 216, 243, 274, 301, 322, 358, 391, 404 ("Plaintiffs incorporate…only to the extent relevant to this Count") and ¶ 370 ("Plaintiffs incorporate…only for entity liability on the underlying constitutional violations in Counts I-V"). Plaintiffs' Third Amended Complaint further includes allegations of conduct by "nondefendants," asserting that said alleged conduct is pleaded as "…causation…", while stating that Plaintiffs seek no relief against anyone not named in the TAC. *Id*. at ¶ 34; *see also id.* at ¶ 23 (Jarred Kier) and ¶ 25 (Jennifer Mullins-Tarle). Accordingly, and for reasons more fully set forth herein, Defendants move to dismiss said allegations under either Fed. R. Civ. P. 8, 12(b) and/or 12(f).

Moreover, most of these allegations formed the basis of Plaintiffs' Second Amended Complaint, which the Court addressed in its most recent opinion and decision issued on July 9, 2026, which decided the Defendants' motions to dismiss Plaintiffs' Second Amended Complaint. [*See* ECF 227]. In that opinion, the Court specifically noted that any causes of action pled again in a Third Amended Complaint must be pled "based on the current state of affairs." *See* [ECF 227 at 17].

To this end, the Court is well familiar at this point with Plaintiffs' allegations of events prior to 2026. Thus, for purposes of brevity here and to meet the Court's page limitation of 25 pages in this brief, and consistent with this Honorable Court's direction to Plaintiffs in the Court's Opinion dated July 9, 2026, Defendants only summarize Plaintiffs' alleged facts beginning in 2026, particularly those arising from the 2026 permitting process relative to the Borough Defendants only. These facts appear in Plaintiffs' TAC at pages 27-30. The parties' lengthy history dating back to 2017 is not necessary to resolve the present motion.

Plaintiffs restarted the application process to change the use and occupancy of their property at 719 North Warren Avenue (the "Property") following the January 14, 2026 Court Mandated Conference, as directed by the Court. *See* TAC at ¶ 162. On January 20, 2026, Plaintiffs delivered the completed packet of documents to the Borough. On January 28, 2026, the Borough approved the application. On January 29, 2026, the documents were provided to Bureau Veritas for the Plan Review Process. *See* TAC at ¶¶ 162-166, 173, 179. As to any further facts involving the Borough Defendants in 2026, Plaintiffs refer to court filings at ECF 213-216 which speak for themselves. As Plaintiffs allege at Paragraph 179, the handwritten notation of "[p]roduction appurtenant to primary retail use" on Plaintiffs' application did not affect the approval of Plaintiffs' application. *See* TAC at ¶ 179.

## II. STANDARD OF REVIEW

When considering a motion to dismiss under the Federal Rules of Civil Procedure, the Court must accept as true all well pled allegations of Plaintiff's Complaint, and construe them in a light most favorable to the plaintiff. *Labov v. Lalley*, 809 F.2d. 220, 221 (3d Cir. 1987). The Court may dismiss the claim if it appears beyond a reasonable doubt that a plaintiff cannot prove those set of facts in support of a claim which would entitle him to relief. *Id.* at 221-22.

The Court does not have to accept every allegation of the Complaint as true. The Court need not credit "bald assertions" or "legal conclusions" in a complaint, when deciding a Motion to Dismiss. *In re Burlington Coat Factory SEC Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997). Further, unsupported conclusions and unwarranted inferences need not be accepted as true. *Trzaska v. L'Oreal USA, Inc.,* 865 F.3d 155, 159 (3d Cir. 2017) ("When conducting our review, 'we must accept the allegations in the complaint as true . . . [but] are not compelled to accept

unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'"quoting *Morrow v. Balaski,* 719 F.3d 160, 165 (3d Cir. 2013) (alterations in original)).

## III. ARGUMENT

### A. Plaintiffs' Third Amended Complaint should be dismissed in its entirety for failing to conform to Federal Rule of Civil Procedure 8.

In granting Plaintiffs a final chance to amend their complaint, this Honorable Court warned Plaintiffs to adhere to and respect Rule 8 of the Federal Rules of Civil Procedure, in particular Rule 8(a)(2), which provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This Court additionally requested that Plaintiffs limit the TAC to the current state of affairs. [*See* ECF 227 at 17]. The TAC is 75 pages long, contains 413 plus paragraphs, and recounts the entire history of the nearly decade-long history of events in the first 33 pages. The TAC is anything but a "short and plain statement of the claim." Plaintiffs convolute the claims with references to parties that were already dismissed with prejudice and details events outside the scope as permitted by this Court to provide "background" and "context," and while providing little to no support of the claims pled. Moreover, and despite Plaintiffs' statements made concerning the untimely allegations throughout their TAC, it appears that Plaintiffs do intend to utilize all of their factual allegations dating back to 2017 as a source of causation to their causes of action. The TAC does not comply with Rule 8 or this Court's order in granting Plaintiffs leave to amend. [*See* ECF 227 at 17]. Therefore, the counts in the TAC should be dismissed with prejudice.

### B. Counts I-IX of Plaintiffs' Third Amended Complaint should be dismissed because of the finality requirement and because they are not ripe.

In Counts I-IX of the TAC, Plaintiffs allege constitutional claims under 42 U.S.C. § 1983. Constitutional challenges under § 1983 arising from challenges to zoning and land use decisions

are not ripe until "the agency charged with implementing the applicable zoning ordinance has reached a final decision on the nature and extent of the impact of the zoning ordinance on a plaintiff's property." *Holland Transp., Inc. v. Twp. of Upper Chichester*, No. 00-397, 2002 U.S. Dist. LEXIS 23420, *20 (E.D. Pa. Oct. 23, 2002) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 87 (1985)). Further, unripe claims should be disposed of on a motion to dismiss. *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir. 1993) ("Because ripeness affects justiciability, we believe that unripe claims should ordinarily be disposed of on a motion to dismiss, not summary judgment.").

Plaintiffs bring constitutional claims under § 1983 in Counts I-IX relating to their permitting disputes with the Borough, Bureau Veritas, and the Individual Defendants. Counts I-VII are not ripe for adjudication and thus should be dismissed because the Zoning Hearing Board has not rendered a final decision on those challenges.[1]

Additionally, Count IV is also not ripe and is premature. Pennsylvania's Municipalities Planning Code (MPC) and the Apollo Zoning Ordinance provide that "[t]he zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in . . .[s]ubstantive challenges to the validity of any land use ordinance[.]" 53 P.S. § 10909.1(a)(1) and Apollo Zoning Ordinance § 803 (1)(A). The MPC further provides that a landowner who, "on substantive grounds, desires to challenge the validity of an ordinance" restricting the use or development of land which he has an interest "shall submit the challenge" to the zoning hearing board or, alternatively, to the governing body "with a request for a curative amendment." 53 P.S. § 10916.1(a).

---

[1] Counts VIII and IX are derivative of several other of the § 1983 claims, and thus fail if those claims fail.

Plaintiffs do not allege that they have submitted their substantive challenge to Ordinance 282-21 to the Zoning Hearing Board or requested a curative amendment. Accordingly, Count IV of Plaintiffs' TAC is not ripe for judicial review and should be dismissed with prejudice.

### C. <u>All of the individually named Borough Defendants are entitled to Qualified Immunity.</u>

Defendants Andreassi, McDermott, Tarle, Shupe, Troup, and Craft should be immediately dismissed from this case because they are entitled to qualified immunity. The individual Defendants have raised qualified immunity in response to each of Plaintiffs' Complaints, but each time Plaintiffs again file confusing amended Complaints, and their TAC is no different. Plaintiffs' TAC again manages to be burdensomely ponderous and, at the same time, lacking in information as to the manner in which the individual Defendants knowingly engaged in any constitutional tort and as further argued herein. Once again, and despite additional guidance from the Court, the Plaintiffs have not rectified their pleading deficiencies.

The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]his immunity is broad in scope and protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (citation omitted). As a general rule, the issue of whether an official is entitled to qualified immunity should be determined prior to trial, as the purpose of qualified immunity is to protect officials and public employees from undergoing the burdens of litigation. *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985).

As further set forth below, Plaintiffs have not alleged facts supporting a violation of a clearly established constitutional right on the part of the individual Defendants. As qualified immunity exists to shield government officials from having to endure litigation by requiring that

they be dismissed and thus avoid the time, expense and distraction of baseless litigation, Defendants Andreassi, McDermott, Tarle, Shupe, Troup, and Craft should be granted qualified immunity and dismissed accordingly with prejudice.

**D. <u>Plaintiffs have not sufficiently pled individual capacity claims against the individual Defendants.</u>**

The TAC still asserts individual capacity claims against each individually named Defendant, but still contains little to no allegations against these individuals such that each is deprived of notice of the manner in which he or she is alleged to have acted in violating Plaintiffs' rights. Plaintiffs have still not remedied these deficiencies despite multiple opportunities to do so. It is well established than an individual government defendant in a civil rights action "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. [] Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (internal citations omitted).

No facts are pled in the TAC to establish that the individual Defendants acted with intention to violate any of Plaintiffs' civil rights. As one example, and relative to Plaintiffs' allegations concerning their 2026 permit application on pages 27-30 of the TAC, Defendants Andreassi, McDermott, Shupe and Craft's names do not appear in any of these allegations. Defendant Tarle's name appears in Paragraph 164 but only in the context of Plaintiff Scott Brunermer speaking at a public meeting at the Borough. *See* TAC, ¶ 164. Further, conclusory allegations or merely naming an individual Defendant in the heading of a count in Plaintiffs' Complaint fails to inform the individual Defendant or the Court of what specific actions of the defendant is at issue, or by what circumstances it could be established that the Defendant's conduct violated any of Plaintiffs' rights.

The TAC does not meet the Third Circuit's standard for a legally adequate civil rights complaint, fails to abide by the pleading standards set by the Federal Rules of Civil Procedure, and should be dismissed with prejudice. *See Evancho v. Fisher*, 423 F.3d 347, 353-55 (3d Cir. 2005).

### E. Plaintiffs Fail to Adequately Plead a *Monell* Claim Against the Borough of Apollo.

A Borough can only be liable under § 1983 for the actions of its employees if a plaintiff can establish that the employees violated their civil rights as a result of the Borough's policies or customs. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 660 (1978).

A custom can be established by showing a course of conduct by municipal officials that, although not formally authorized, "is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Additionally, "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citation omitted and alteration in original).

Specifically, in Count VIII of their TAC, titled "Entity Liability under 42 U.S.C. § 1983, Policy, Custom, Final-Policymaker Action, Delegation, Ratification, and Deliberate Indifference," Plaintiffs' argue that the Borough's "final policymakers affirmatively created, maintained, and ratified an unwritten policy and custom of using fragmented, nonfinal record administration to block the commercial use of property while evading federal judicial review." TAC at ¶ 371. However, Plaintiffs fail to identify a policy or custom of the Borough that has led to a violation of their civil rights. Their allegations describe, at most, an isolated dispute concerning Plaintiffs' own permit application and allegations that officials acted improperly as to their permit application. Plaintiffs point to their own permitting disputes as evidence of the Borough's alleged customs or policies which allegedly violated their civil rights. Plaintiffs do not identify any other property

owner subjected to the "fragmented, nonfinal record administration" they allege. They have not shown a practice "so widespread as to have the force of law" to fall under a custom, and they have not identified any "official proclamation, policy, or edict" enacted by an official possessing final policymaking authority.

The same applies to Plaintiffs' § 1983 claims brought in Counts I-IX. Without such identification of any alleged policies or customs, all of Plaintiffs' Section 1983 claims in Counts I-IX against the Borough and, at least Count VIII, should be dismissed with prejudice.

### F. **Plaintiffs' claims should be dismissed to the extent they are barred by the applicable statute of limitations on the face of Plaintiffs' Third Amended Complaint.**

The statute of limitations for § 1983 claims is two years. *Lake v. Arnold*, 232 F.3d 360, 368-69 (3d Cir. 2000). Counts I-IX of Plaintiffs' TAC raise § 1983 claims. In each of these Counts at the very first paragraph, Plaintiffs incorporate into the count multiple sections of their alleged facts. The majority of these alleged facts occurred well outside of two years and/or possibly constitute discrete acts that triggered the two-year statute of limitations to bring a claim. Specifically at Count II of the TAC, Plaintiffs raise First Amendment and Petition-Clause Retaliation claims against individual Defendants Troup, Shupe, McDermott, Andreassi, and Tarle, alleging "retaliatory" conduct between 2018 and 2021.

It follows that, at a minimum, Count II should be dismissed with prejudice as barred by the applicable statute of limitations to bring § 1983 claims. Defendants further request dismissal of Plaintiffs' § 1983 claims (Counts I-IX) with prejudice to the extent they are also brought outside of the two-year statute of limitations and/or are based on alleged events that started the clock ticking to bring a claim.

**G. <u>In the alternative, Plaintiffs' Third Amended Complaint should be dismissed in its entirety for failure to state a claim pursuant to Rule 12(b)(6).</u>**

Should the Court find that Plaintiffs' claims are ripe and can move forward despite all of the barriers raised herein above, Defendants also move to dismiss Plaintiffs' substantive claims raised in Counts I-X in their entirety for the reasons more fully articulated below.

**1. <u>Plaintiffs' claims of § 1983 procedural due process (Count I) and substantive due process (Count V) fail as a matter of law because they have not alleged a *prima facie* case for either claim.</u>**

The Court should dismiss Plaintiffs' procedural due process claim at Count I and their substantive due process claim at Count V because they fail to allege a *prima facie* case for either claim under § 1983.

To state a claim under § 1983, a plaintiff must meet the following threshold elements: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Tucker Indus. Liquid Coatings, Inc. v. Borough of E. Berlin*, 656 F. App'x 1, 5 (3d Cir. 2016).

For a substantive due process claim, a plaintiff must further prove "the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008).

For a procedural due process claim, a plaintiff must show that s/he were deprived of an individual interest within the Fourteenth Amendment's protection of "life, liberty, or property" and that the available procedures did not provide "due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Further, "[a] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Id.* at 116 (quoting *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982)).

Plaintiffs' claims in Counts I and V fail because they have not adequately pled a deprivation. Count I further fails because Plaintiffs have not availed themselves of the available procedural remedies.

Plaintiffs bring a procedural due process claim against the Borough and Troup at Count I concerning the 2026 permitting process. Plaintiffs allege that the Borough and Troup deprived them of their property-related rights because the permitting process was unclear and they were unable to obtain an "integrated record." TAC at ¶ 204. Plaintiffs claim the Borough mishandled the 2026 permitting process by failing to provide a clear, consistent, and final permit record identifying the controlling permit, classification, drawings, conditions, fees, and appealable decision. Plaintiffs claim Troup contributed to the alleged deprivation by adding the "[p]roduction appurtenant to primary retail use" notation to their approved permit, participating in the Borough's permit record, and failing to explain the Borough's final position or the legal effect of her notation.

At Count V, Plaintiffs bring a Substantive Due Process claim against the Borough and Troup, further alleging that Borough officials deliberately and maliciously manipulated the permitting and zoning process to interfere with Plaintiffs' use and sale of their property.

**<u>Plaintiffs Fail to Plead a Deprivation</u>**

Plaintiffs' claims at Count I and V rely on the premise that Defendants deprived them of their property rights by allegedly complicating and delaying the permitting process necessary to operate their artisanal soap business at the Property. But Plaintiffs' own allegations establish that they do, in fact, have an approved permit.

Plaintiffs admit in Paragraphs 205 and 307 of the TAC that the Borough approved the 2026 permit application, and admit in Paragraph 308 that they were issued a permit with the desired

M/F-1 designation. Plaintiffs thus acknowledge that they are in possession of an approved permit with the M/F-1 designation.

Plaintiffs do not have a constitutional entitlement to a permit free of clerical errors or clerk notations, or to municipal administrative processes customized to their preferences. There is no deprivation of a protected property interest here.

**Plaintiffs Failed to Avail Themselves of the Available Procedural Remedies**

Plaintiffs admit in Count I in Paragraph 205 that a zoning hearing board appeal exists for a Zoning Officer's failure to act, which is found at 53 P.S. § 10909.1(a)(3) and Apollo Zoning Ordinance § 803 (1)(C). Pennsylvania's MPC provides that, "[t]he zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in . . . [a]ppeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or **failure to act on the application therefor**[.]" 53 P.S. § 10909.1(a)(3) (emphasis added); *see also* Argument § B, *supra*,.

Therefore, if Plaintiffs wish to make an abstract appeal of the zoning officer's failure to clarify the extent to which their permit was approved and issued, then they are free to do so. Plaintiffs did not avail themselves of this procedural remedy, and instead chose to bring this claim in Federal Court. As such, their substantive due process rights have not been violated.

Therefore, Counts I and V should be dismissed with prejudice.

**2. Count II should be dismissed as against the Borough of Apollo, Brenda Troup, Deanna Shupe, Cynthia McDermott, Scott Andreassi, and Mark Tarle.**

To plead a retaliation claim under the First Amendment, "a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally

protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citation omitted). "To establish the requisite causal connection[,] a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted). Further, a showing that a defendant "would have taken the same action even if the plaintiff had not engaged in the protected activity" can defeat a retaliation claim. *Id.*

Plaintiffs bring First Amendment and Petition-Clause Retaliation claims against Troup and the Borough, vaguely alleging that they engaged in "protected speech and petitioning." Plaintiffs fail to plead facts supporting the requisite retaliatory action or a causal link between the protected conduct and the retaliatory action.

**Plaintiffs Fail To Plead Retaliatory Action and a Causal Link**

Plaintiffs identify only two allegedly retaliatory acts for Troup: the "challenged notation" she added to the Borough application the day after Defendant Scott criticized the Borough at a Council meeting,[2] and a statement Troup made during Walker due diligence that the property's rear exit was still unapproved by the county.[3]

Plaintiffs' TAC does not clearly explain why the notation was materially adverse, how Troup's statement constituted an adverse action, or how either act was causally connected to protected First Amendment activity beyond Plaintiffs' reliance on temporal proximity and generalized allegations of perceived slights.

[2] Defendants presume the unspecified "challenged notation" is the earlier referenced "[p]roduction appurtenant to primary retail use" notation.

[3] Throughout their TAC, Plaintiffs repeatedly mischaracterize Troup as stating the rear deck was "definitely not approved." However, as shown in Exhibit 10 of Plaintiffs' TAC, this statement was made by the Walkers' realtor, Lori Weig-Tamasy, in an email to Plaintiffs dated March 24, 2025. In that email, Weig-Tamasy includes an earlier email from Troup stating that, among other things, "the rear exit is still unapproved by the county."

As to the Borough, Plaintiffs fail to identify any clear, discrete act of retaliation by the Borough occurring within the two-year statute of limitations period or otherwise. They broadly characterize ongoing permitting, records, enforcement, and property-related disputes as retaliatory conduct, without identifying what particular protected activity prompted what particular adverse Borough action. Therefore, Count II should be dismissed with prejudice.

**3. <u>Count III alleging Class-Of-One Equal Protection should be dismissed as a matter of law.</u>**

Count III asserts a class-of-one equal protection claim against six different Defendants, including co-defendants, but fails to provide each Defendant with fair notice of the conduct for which Plaintiffs seek to impose liability, in violation of Fed. R. Civ. P. 8.

A class-of-one protection claim requires a plaintiff to show that "(1) the defendant[s] treated him differently from others similarly situated, (2) the defendant[s] did so intentionally, and (3) there was no rational basis for the difference in treatment." *Thomas v. Coopersmith*, 663 F. App'x 120, 123 (3d Cir. 2016) (alterations in original) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)). "[T]he failure to identify similarly situated persons dooms an equal-protection claim." *Stradford v. Sec.'y Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022). And, it is black letter law in this Circuit that the comparator alleged must be similar to plaintiff in "all relevant respects." *Wilcher v. Postmaster General*, 441 Fed. App'x 879, 882 (3d Cir. 2011).

Plaintiffs identify numerous businesses and properties as purported comparators, but they do not tie those comparators to specific acts or omissions by the individual Defendants, clearly describe how the comparators are similarly situated (i.e., similar to them in all relevant respects), or plead facts showing that any alleged differential treatment lacked a rational basis. Plaintiffs describe Defendants' alleged misconduct in generalized terms as part of Plaintiffs' years-long permitting disputes and grievances, without clearly identifying the specific decisions or events

being compared. For example, Plaintiffs allege in paragraph 263 of the TAC that Troup "administered vacancy and MPAF functions against Plaintiffs, added the 2026 notation, and issued Apollo's no-record and no-recusal response for adjacent property in which she retained an interest." However, they do not clearly identify how any of these actions differed from Troup's treatment of the purported comparators or explain how the comparators were similarly situated in all relevant respects.

This Honorable Court specifically instructed Plaintiffs to plead facts showing they were similarly situated to their proposed comparators in all relevant respects. In response, Plaintiffs present an incoherent collection of purported comparisons and conclusory assertions of differential treatment, and ask the Court and each Defendant to sift through and piece together those connections for themselves.

Therefore, Count III should be dismissed with prejudice.

**4. <u>Count IV alleging Void for Vagueness should be dismissed because Plaintiffs lack standing.</u>**

Plaintiffs bring a § 1983 Void for Vagueness claim against the Borough at Count IV alleging that Ordinance 282-21 is unconstitutionally vague because, they contend, its definitions and procedures concerning vacant or abandoned property are confusing, thereby denying fair notice and permitting arbitrary enforcement. They challenge "only present and credibly threatened future application of Ordinance 282-21 to the Property, not Apollo's authority to regulate genuinely abandoned, unsafe, unmaintained, or nuisance property." TAC at ¶ 277. Plaintiffs seek prospective declaratory and injunctive relief against enforcement of the ordinance to the Property.

Plaintiffs lack standing to bring this claim because they have not alleged an injury in fact based on a sufficiently concrete and particularized threat that the Ordinance will be applied to them in the manner they challenge.

For Article III standing, a plaintiff must "show that she has suffered, or will suffer, an injury that is **concrete, particularized, and actual or imminent**; fairly traceable to the challenged action; and redressable by a favorable ruling." *Reading v. North Hanover Twp.*, No. 1:23-cv-1469 (KMW-SAK), 2026 U.S. Dist. LEXIS 7585, at *97 (D.N.J. Jan. 13, 2026) (quoting *Murthy v. Missouri*, 603 U.S. 43, 57 (2024)) (emphasis added). Where, as here, a plaintiff seeks "forward facing injunctive relief for future harms," the threatened injury must be "certainly impending" or present a "substantial risk" of occurring. *Id.* at 98. Here, Plaintiffs allege that the Borough may one day enforce Ordinance 282-21 against the Property in some unspecified and unconstitutional manner, but identify no concrete or imminent threat that the Ordinance will be applied to them in the allegedly unconstitutional manner they challenge. Therefore, Plaintiffs have not shown that the threatened injury is "certainly impending." Accordingly, Plaintiffs have not plausibly alleged an injury in fact sufficient to establish Article III standing and Count IV should, therefore, be dismissed with prejudice.

5. **Count VI – Regulatory Taking Without Just Compensation v. Borough of Apollo.**

At Count VI, Plaintiffs bring a Regulatory Taking without Just Compensation claim under the Fifth and Fourteenth Amendments. Plaintiffs allege a "parcel-specific partial taking because Apollo made unresolved municipal approval a continuing condition of lawful commercial occupancy while withholding or failing to provide the definitive action necessary to complete the delegated permit and inspection process." TAC at ¶ 325.

In Pennsylvania, a regulatory taking through the exercise of police power or land-use regulation occurs only when the government interference is so drastic that it has nearly the same effect as the complete destruction of the owner's property rights. *Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1033 (3d Cir. 1987). For an as-applied taking claim, as Plaintiffs appear to

allege, the claim is unripe absent "a definitive position on the issue" by the decision-maker. *Cnty. Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006).

Plaintiffs have not pled, nor can they plead, a partial regulatory taking by way of the Borough's permitting process because, and as Plaintiffs have admitted, Plaintiffs possess an approved permit with the M/F-1 designation. There is no taking here. Plaintiffs' self-declared "de facto finality" status due to the Borough's alleged "maintained nonresolution" conflicts with Plaintiffs' admissions that their permit has, in fact, been approved. As such, Count VI should be dismissed with prejudice.

6. **Count VII – Formal Physical Taking by Declaration of Taking v. Borough of Apollo.**

At Count VII, Plaintiffs bring a Formal Physical Taking by Declaration of Taking Claim under the Fifth and Fourteenth Amendments.

This claim relates to eminent domain proceedings currently pending in the Pennsylvania Commonwealth Court concerning a portion of the Property. Plaintiffs argue that the Borough's appraisal and tender of $3,275 for the 479.5 square foot area on the Property "omitted compensable interests or effects on the remainder." This Court should abstain from exercising its jurisdiction over this claim under the *Younger* Doctrine.

While accepting a condemner's estimated compensation does not waive the right to seek a final determination of just compensation under 26 Pa.C.S. § 307(c)(1), a condemnee cannot challenge an appraisal and tender in Federal Court while the eminent domain proceedings are still pending in state court because the challenge is not ripe.

The *Younger* doctrine aligns with principals of comity and stands for the proposition that a federal district court has discretion to abstain from exercising jurisdiction over a matter where "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate

important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005).

Here, the eminent domain proceedings are currently pending in the Pennsylvania Commonwealth Court. Further, eminent domain proceedings implicate important state interests, as "an eminent domain proceeding ha[s] a 'special and peculiar nature' involving a sovereign prerogative." *Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative*, 583 F.2d 104, 111 (3d Cir. 1978). Finally, the state proceedings afford an adequate opportunity to raise the federal claims because there is no state procedural bar preventing the Plaintiffs from raising their constitutional or valuation concerns in Pennsylvania courts. Accordingly, the Court should abstain from exercising jurisdiction over Count VII and dismiss it.

### 7. **Count IX alleging Civil-Rights Conspiracy fails to state a claim and should be dismissed.**

Plaintiffs bring a Civil-Rights Conspiracy claim in Count IX against Troup, McDermott, Shupe, Craft, Andreassi, and Tarle. As an initial matter, as stated in Argument § F, *supra*, the occurrences Plaintiffs cite for Defendants McDermott, Shupe, Craft, Andreassi, and Tarle all fall outside the two-year statute of limitations, and, thus, must be dismissed. The remaining occurrences concern Defendant Troup, which involve the alleged adverse municipal status Troup communicated during the Walker sale, and the "production appurtenant to primary retail use" notation.

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (citation omitted). The elements of conspiracy are agreement and concerted action, a plaintiff must demonstrate that defendants reached an understanding, or a meeting of the minds, which can be inferred from

circumstantial evidence. *Hyman v. Tice*, No.: 3:25-CV-00040-SLH-CBB, 2025 U.S. Dist. LEXIS 222196, at *22-23 (W.D. Pa. Nov. 12, 2025).

Plaintiffs allege that Defendants shared an objective "to preserve an unresolved administrative status that prevented lawful use of the Property while avoiding one definitive, reviewable determination." TAC at ¶ 393.

Count IX should be dismissed with prejudice because Plaintiffs have not alleged any facts to show that the Defendants reached an understanding or an agreement to do anything of the sort. Plaintiffs do not allege any facts to show that Troup communicated with another Defendant regarding her "[p]roduction appurtenant to primary retail use" notation on Plaintiffs' permit application, or even how that furthered the alleged "shared objective." Similarly, Plaintiffs do not provide any facts to suggest that Troup had an understanding with another named defendant to further the "shared objective" through the "adverse municipal status" Troup communicated during the Walker sale.

Plaintiffs cite to no instances where individual defendants communicated with each other, even tacitly, to create a conspiracy. Plaintiffs allege no facts which suggest that Defendants spoke or had an understanding regarding the "shared objective." Plaintiffs infer an agreement from the fact that multiple officials participated in the same administrative process. Alleging that various individual actions were interlaced does not indicate how, when, or why a conspiracy came into existence.

Therefore, Count IX should be dismissed with prejudice. Further, since Count IX is derivative of Counts I, II, III, and V, if those counts are dismissed, Count IX must also be dismissed.

**8. <u>Count X alleging Tortious Interference with Prospective Contractual Relations against Brenda Troup should be dismissed as a matter of law.</u>**

Plaintiffs claim that Troup interfered with their potential 2025 sale of the Property to Walker by allegedly providing the realtor, Weig-Tamasy, with misleading information about the Property's permits, zoning, code compliance, and occupancy status. They allege that Troup did so because of a personal or business interest in the Property, that her statements contributed to Walker's concerns and its $155,000 offer, and that the sale likely would have gone forward on better terms if not for her alleged interference.

The TAC does not plausibly connect Troup's conduct to the failure of the sale. Under Pennsylvania law, a claim for tortious interference with prospective contractual relations requires a plaintiff to show that the defendant, "without a privilege to do so, induces or otherwise purposely causes a third person not to … enter into or continue a business relation with another." *Thompson Coal Co. v. Pike Coal Co*., 412 A.2d 466, 470 (Pa. 1979) (quoting RESTATEMENT OF TORTS, § 766 (1939)).

Here, the only specific statement Plaintiffs attribute to Troup is that the "the rear exit is still unapproved by the county." Yet Plaintiffs conclude that Troup caused or materially intensified the risks identified by Walker "as part of the basis for the $155,000 offer and its contingencies." TAC at ¶ 411. The Complaint, however, does not explain how Troup caused or intensified most of those concerns. In fact, Plaintiffs expressly acknowledge that they do not attribute Walker's separate concerns about the roof, retaining wall, or structural condition to Troup.

As shown on pages 2-3 in Exhibit 10 of Plaintiffs' TAC, the deck-approval issue was only one of several concerns Walker considered when making the $155,000 offer. Walker also identified significant concerns about the Property's roof, including estimated repair costs of "well over $25,000," along with other issues detailed in Exhibit 11.

At most, Plaintiffs allege that Troup's statement about the deck was one factor among many that affected Walker's decision. They then speculate that, without Troup's involvement, negotiations might have continued and the parties might have reached a deal on more favorable terms. That is not enough to plausibly allege causation. The TAC itself identifies numerous independent reasons for Walker's concerns and the decision not to proceed on Plaintiffs' preferred terms.

Plaintiffs also have not adequately alleged that Troup purposefully interfered with the prospective sale. Troup was acting in connection with her municipal responsibilities and communicating information about the Property. There are no facts showing that she intended to prevent Plaintiffs from selling the Property to Walker.

Thus, even accepting Plaintiffs' allegations as true, the TAC does not plausibly allege that Troup's conduct caused Walker to abandon or otherwise not continue the prospective transaction. Therefore, Count X should be dismissed with prejudice.

## IV. CONCLUSION

Despite multiple opportunities to amend with specific guidance from the Court, Plaintiffs' TAC still contains multiple deficiencies that are fatal to all of their claims against each named Defendant and as a whole. Accordingly, and for all of the reasons stated herein, Defendants Borough of Apollo, Cynthia McDermott, Mark Tarle, Deanne Shupe, Brenda Troup, Richard Craft and Scott Andreassi respectfully request that the Court dismiss Plaintiffs' TAC in its entirety with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

BY: /s/ *Teresa O. Sirianni*

TERESA O. SIRIANNI, ESQUIRE
PA ID #90472
**Counsel for Defendants, Borough of Apollo, Cynthia McDermott, Mark Tarle, Deanne Shupe, Brenda Troup, Richard Craft and Scott Andreassi**
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA 15219
(412) 803-1140, (412) 803-1188/fax
TOSirianni@mdwcg.com