**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JANET L. BRUNERMER and** | : | |
| **ROBERT SCOTT BRUNERMER,** | : | No. 2:21-cv-00740-MRH |
| Plaintiffs | : | No. 2:21-cv-00856-MRH |
| | : | |
| v. | : | This document relates to: |
| | : | **No. 2:21-cv-00740-MRH** |
| **BOROUGH OF APOLLO et al.,** | : | |
| Defendants. | : | (The Honorable Mark R. Hornak) |
| | : | |
| | : | **ELECTRONICALLY FILED** |
| | : | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS BUREAU VERITAS NORTH AMERICA, INC., GRANT KANISH, AND RODNEY SMAY'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NOS. 239, 240]**

## I. INTRODUCTION

This is not a case about Plaintiffs refusing to pay a plainly identified permit fee for a plainly identified permit. It is about a private corporation exercising delegated governmental power, creating an administrative record that does not identify which permit controls, and then asking the Court to dismiss the people trapped in that record because they did not pay for an answer BVNA would not clearly provide.

BVNA's Motion rests on one load-bearing assertion: that the requested M/F-1 permit was "reissued" to Plaintiffs on March 19, 2026, resolving the dispute and leaving only Plaintiffs' unpaid $404.50 fee as the obstacle to moving the permitting process forward. (ECF 240 at 4-5, 9-10.) But BVNA's own exhibits do not say that. The permit BVNA relies upon says "Date Issued: 3/2/2026." It bears Permit No. BVA26-040 and lists Use Group "M/F1." (ECF 240-6 at 30.) BVNA's own project-management record lists the project as "Issued" and shows the invoice as verified on March 2, not March 19. (ECF 240-6 at 31.) BVNA's own Inspection Record Card shows every listed review category, including "Permit Issue," marked "Passed" on March 2. (ECF 240-6 at 32.) The

same record also says, "NOT YET VALID." (ECF 240-6 at 33.)

No document among BVNA's six exhibits identifies a March 19 permit, a March 19 amendment, a March 19 superseding decision, or a March 19 explanation of how the asserted reissuance relates to the March 2-dated M/F-1 permit and the competing M/S-1 track. The Motion calls that contradiction resolved. The documents do not.

That matters because the people who had to live with this record were not writing a brief about it. Plaintiffs had to decide whether they could lawfully operate, whether they could pay a fee that would activate anything definite, which classification governed, which drawing set controlled, what further work was required, and what decision could be appealed. BVNA's position is effectively that Plaintiffs should have paid first and asked what they had purchased later. The TAC alleges that Plaintiffs asked first: identify the controlling permit, provide one itemized invoice, and issue one consolidated, code-cited deficiency letter if any deficiencies remained. (ECF 240-6 at 17-18.) The record does not show that BVNA supplied those things in a coherent form.

BVNA wants the Court to treat an internally contradictory administrative file as an ordinary payment dispute. At Rule 12, the Court need not join that revision of the record.

## II. BVNA'S OWN EXHIBITS CONFIRM, RATHER THAN RESOLVE, THE DISPUTED PERMIT-STATUS ALLEGATIONS

### A. The Rule 12 Record Does Not Permit BVNA To Win by Characterizing Its Own Documents

Rule 12(b)(6) tests legal sufficiency, not the defendants' preferred version of contested facts. The Court accepts well-pleaded allegations as true and draws reasonable inferences in Plaintiffs' favor. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009); Connelly v. Lane Construction Corp., 809 F.3d 780, 786-91 (3d Cir. 2016). Review is confined to the complaint, attached exhibits, public records, and undisputedly authentic documents integral to the

claims. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

A document properly before the Court can be read for what it actually says. It cannot be used as a vehicle for accepting the movant's disputed interpretation, resolving ambiguity against Plaintiffs, or making factual findings about who created it, when it was transmitted, which version superseded another, or what legal effect it had. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Fed. R. Civ. P. 12(d).

BVNA's suggestion that the Court may wish to receive "all the correspondence" between BVNA and Plaintiffs overlooks that BVNA already filed extensive 2026 permitting communications at ECF No. 214 and its accompanying exhibits, and the TAC expressly relies upon that docketed material. The issue is therefore not the absence of correspondence from the record, but what the correspondence and BVNA's own records actually show.

That is the line BVNA's Motion crosses. It does not merely attach documents. It insists those documents establish a March 19 reissuance, a resolved M/F-1 classification, and an uncomplicated unpaid-fee dispute. But its own documents identify March 2. They do not explain the asserted March 19 reissuance. They do not reconcile the M/F-1 record with the M/S-1 record. They do not identify which record payment would activate. The Court can read the documents. It cannot be required to pretend they say what they do not say.

BVNA's closing assertion that "every other property owner" has completed this process "with ease" fares no better. (ECF 240 at 18.) That universal factual assertion appears nowhere in the TAC and BVNA identifies no exhibit establishing it. Rule 12 does not convert counsel's closing rhetoric into evidence.

**B. The Permit Does Not Say What BVNA's Brief Says It Says**

BVNA's brief asserts that after further communications, Plaintiffs supplied sufficient information to change the permit to M/F-1, "which was reissued to Plaintiffs on March 19, 2026." (ECF 240 at 4.) Plaintiffs do not deny that Exhibit F includes an M/F-1 permit. The dispute is not whether that piece of paper exists. The dispute is whether BVNA can call it a March 19 reissuance when it is dated March 2 and BVNA's own corresponding database records also identify March 2 as the operative date.

The permit says "Date Issued: 3/2/2026," gives Permit No. BVA26-040 and TMS Project No. 2026-400731, and lists Use Group "M/F1." (ECF 240-6 at 30.) It is stamped "Not Valid Until Paid." The project-management printout says "Project Status: Issued" and shows the $404.50 invoice verified on March 2. (ECF 240-6 at 31.) The Inspection Record Card marks Municipal Prior Approval, Mechanical, Electrical, Plumbing, Energy, Accessibility, Building, and Permit Issue as Passed on March 2, signed off by Rod Smay and Marcie Stoops. (ECF 240-6 at 32.) It separately bears the comment "NOT YET VALID." (ECF 240-6 at 33.)

Nothing in the exhibits attached to BVNA's Motion supplies the missing bridge. There is no March 19 amendment. There is no withdrawal or voiding of an earlier permit. There is no supersession notice. There is no explanation identifying the controlling record. There is no document explaining how a permit dated March 2 became a March 19 reissuance.

Pennsylvania's UCC makes the distinction important. For commercial construction, a Building Code Official must grant or deny a permit application within the prescribed period, 34 Pa. Code § 403.43(a), and the Construction Code Act further provides that, once construction plans are approved, the code administrator “shall issue a building permit immediately upon receipt of all other required permits or approvals related to the construction.” 35 P.S. § 7210.502(a)(1). Fee payment affects issuance and validity: a third-party agency may withhold issuance until required

fees are paid, 34 Pa. Code § 401.2a(d), and a permit is not valid until those fees are collected, § 403.43(m). Those distinctions make BVNA's shifting descriptions more—not less—material. BVNA stated contemporaneously that it was applying § 403.43 and that the permit "has been issued on March 2, 2026"; two days later it stated that the permit had only been prepared and "has not been issued until the fee has been paid"; it now tells this Court that an M/F-1 permit was "reissued" on March 19. BVNA identifies no UCC determination or contemporaneous record reconciling those three different descriptions of the same permit's status.

BVNA's own Brief later calls the permit package "entire" while conceding that it was provided "except for the drawings." (ECF 240 at 17.) That exception is not incidental. Identification of the operative drawing set is one of the very matters the TAC alleges remained unresolved. A permit package cannot establish that question resolved while expressly excluding the documents that define what work and use the permit actually authorizes.

The TAC alleges precisely that absence: neither version was identified through a dated amendment, withdrawal, voiding document, or superseding determination as the controlling permit. (TAC paragraph 308.) BVNA's own exhibits do not defeat that allegation. They make it harder to dismiss.

**C. Plaintiffs Do Not Contest BVNA's Authority To Charge a Properly Identified Fee; They Contest BVNA's Refusal To Say What the Fee Would Activate**

BVNA's exhibits clarify the arithmetic. They show a $400.00 minimum commercial-alteration charge plus a $4.50 state permit fee, totaling $404.50. (ECF 240-6 at 31, 34-35.) Plaintiffs do not dispute that a third-party UCC agency may establish fees and may condition permit validity on collection of a properly identified fee. 34 Pa. Code section 401.2a(a), (d); 34 Pa. Code section 403.43(m).

But that concession does not cure the actual problem. The legal authority to collect a fee does not answer which of the competing permit records payment would activate; which classification would govern; which plans were controlling; what conditions remained; or what decision Plaintiffs could appeal after payment. BVNA's own exhibits now provide much of the arithmetic Plaintiffs sought. They do not provide the coherent, integrated governmental record Plaintiffs requested.

Plaintiffs asked for "one itemized invoice tied to that schedule: service item, rate, time/units, total," and for "one consolidated, code-cited deficiency letter if any deficiencies remain, rather than serial re-review letters introducing new items." (ECF 240-6 at 17-18.) That was not an effort to avoid payment. It was an effort to determine what payment would purchase and what standard BVNA was applying. A person cannot be faulted for refusing to buy an unidentified permit for an unidentified use under unidentified conditions.

**III. THE TAC SATISFIES RULE 8**

BVNA argues that the TAC does not comply with Rule 8, while expressly incorporating arguments aimed at superseded complaints. (ECF 240 at 1 n.1, 3.) That approach proves neither that the present TAC is deficient nor that BVNA lacks fair notice of it.

BVNA also begins from a description of this Court's July 9 Opinion that the Opinion itself does not support. BVNA asserts that the Court instructed Plaintiffs to “focus on the recent events of 2026” because the facts alleged through the Second Amended Complaint were insufficient. (ECF 240 at 1.) The Court instead recognized that the facts had continued to develop, dismissed Counts I, II, III, V, and VIII without prejudice because “material events have evolved,” expressly permitted new allegations concerning those claims and developments, and directed Plaintiffs to file a short and plain pleading. (ECF No. 227 at 1–2, 18–19.) BVNA cannot convert a direction to

plead the current state of affairs into an instruction to erase the history that supplies motive, notice, custom, causation, agreement, and context for the later acts.

The TAC is 75 pages and 413 paragraphs, substantially reduced from the 199-page, 1,410-paragraph proposed TAC the Court rejected in July 2026. (ECF No. 227 at 16-19; ECF No. 228.) Garrett holds that Rule 8 does not impose a mechanical page limit; the question is whether the pleading gives fair notice of the claims and their grounds. 938 F.3d 69, 92-94 (3d Cir. 2019).

BVNA's own 19-page brief confirms that it received that notice. It identifies six distinct claims asserted against BVNA, Kanish, and Smay. It quotes TAC paragraphs. It reconstructs the 2026 chronology. It mounts separate legal arguments. And it attaches six exhibits. A party that can do all of that has not been left unable to answer.

Rule 8 does not require Plaintiffs to erase the chronology necessary to explain why BVNA's March 2026 records matter. It does not require Plaintiffs to pretend that a disputed permit file came into being without history. And it does not permit BVNA to invoke obsolete arguments against superseded complaints as a substitute for confronting the claims actually pleaded now.

## IV. KANISH AND SMAY HAVE NOT ESTABLISHED QUALIFIED IMMUNITY ON THE FACE OF THE TAC

### A. BVNA Never Answers the Threshold Question: Are Employees of a Private, Ongoing Government Contractor Entitled to Qualified Immunity?

BVNA asserts qualified immunity for Kanish and Smay as employees of a private corporation performing delegated governmental work. (ECF 240 at 5-6.) It cites Harlow's general rule but does not engage the threshold question the Supreme Court has said does not have a categorical answer.

In Richardson v. McKnight, the Court denied qualified immunity to employees of a private firm systematically and permanently performing an ongoing governmental function, emphasizing

market pressures and the absence of the traditional public-employment relationship. 521 U.S. 399, 412-13 (1997). In Filarsky v. Delia, the Court allowed a temporarily retained private attorney to seek immunity, while expressly distinguishing Richardson's institutional facts. 566 U.S. 377, 393-94 (2012).

BVNA's Motion asks the Court to grant private corporate employees the litigation protection of public officials without establishing whether their ongoing, institutional, competitively structured role resembles the contractor in Richardson or the temporary individual professional in Filarsky. That question depends on facts not established by the TAC: the duration and exclusivity of BVNA's arrangement, governmental supervision, market pressures, the contractual allocation of authority, and the practical character of BVNA's delegated work. BVNA cannot bypass that inquiry by calling its employees government actors when it wants immunity while remaining a private corporation when accountability is at issue.

**B. BVNA Reduces Alleged Acts to Harmless Labels and Omits the Conduct the TAC Actually Describes**

BVNA calls Smay's role merely "approval of drawings" and Kanish's role merely delay through the MPAF. (ECF 240 at 5-6.) Those labels leave out the allegations.

The TAC alleges that Smay personally changed the plans' lower-level classification from F-1 to S-1 on March 1, 2026, without a contemporaneous code-cited determination identifying a defect in F-1 or explaining the change. (TAC paragraphs 170-171, 209.) BVNA later failed to reconcile that alteration with a March 2-dated M/F-1 permit. BVNA's own Exhibit F shows that as late as February 18 it was still using F-1 and requesting only a drawing-label clarification. (ECF 240-4 at 2.) On the pleaded facts, the later S-1 change was not a continuation of an identified deficiency. It was a new classification change without the stated explanation that would allow a

property owner to understand, cure, or challenge it.

The M/F-1 designation was not a novel technical issue first discovered in 2026. BVNA's 2020 review recognized the proposed M/F-1 use. After Plaintiffs addressed review comments, Smay stated that Apollo's municipal signoff and the pending accessibility variance were the remaining items before the permit was "ok to issue." The variance was granted. Kanish acknowledged that BVNA possessed approved drawings and the variance, and identified Apollo's signed MPAF as the "last piece of the puzzle." (TAC paragraphs 152-153.) In 2023, BVNA stated that Smay had signed off on drawing revisions and that no further drawing action was necessary. (TAC paragraph 148.)

The TAC thus alleges more than a technical disagreement. It alleges that after BVNA had reviewed the same project, identified limited remaining steps, described plans as approved, and said no further drawing action was necessary, Smay changed the lower-level classification from F-1 to S-1 without explaining what had changed or identifying a contemporaneous code basis. Then BVNA maintained an unreconciled record when a March 2 M/F-1 permit appeared under the same number.

The TAC separately alleges that Kanish approved the resulting classification and created Permit No. BVA26-040; directed Apollo's initial denial of Scott Brunermer's access to the permit file until Scott presented a written RTKL request; and maintained the unreconciled record after Plaintiffs asked for one consolidated, code-cited deficiency letter and one itemized invoice. (TAC paragraphs 170, 173, 227.) It alleges that Kanish stated before a completed application existed that the building "isn't going to pass inspection anyway," and later proposed that Apollo go on "Offense" through citations so "maybe this could go away" because Plaintiffs were "always asking for documents." (TAC paragraphs 39, 87, 310.)

Those are not abstract assertions about delay. They are allegations of specific acts, specific words, and a specific course of conduct. **BVNA has not established immunity on the face of the TAC. At the pleading stage, dismissal on qualified-immunity grounds is appropriate only where entitlement to immunity is established on the face of the complaint. *Thomas v. Independence Township*, 463 F.3d 285, 291 (3d Cir. 2006)**.

## V. COUNT I (PROCEDURAL DUE PROCESS) STATES A CLAIM AGAINST BVNA, KANISH, AND SMAY

BVNA argues that Plaintiffs had adequate state remedies-an MPC appeal or mandamus-and that their failure to invoke them defeats Count I. (ECF 240 at 6-9.) Plaintiffs do not ask the Court to relitigate the procedural due process theory dismissed at ECF No. 82. Count I rests on materially later conduct in the 2026 process: Smay's involvement, competing M/S-1 and M/F-1 permit records, inconsistent issuance positions, and failure to identify one operative Building Code Official disposition capable of meaningful review.

BVNA correctly notes that Harr v. Washington Area Humane Society involved an alleged failure to issue either an occupancy permit or written denial, and that the court found mandamus available. No. 21-1560, 2024 WL 4064140, at *4-5 (W.D. Pa. Sept. 5, 2024). Plaintiffs do not avoid Harr by merely saying no written denial existed. The distinction is structural. Harr concerned the absence of a permit or denial. The 2026 process alleged here involved affirmative, mutually inconsistent positions about what had happened.

The TAC alleges that BVNA represented that an M/S-1 permit had issued. Days later, it represented that no permit had issued pending payment. (TAC paragraph 172; ECF 240-5 at 4.) It later claimed an M/F-1 permit was reissued on March 19, while the permit and BVNA's own inspection database each identify March 2. The TAC further alleges that, as late as June 2026,

BVNA's billing contacts could not identify whether the invoice concerned M/S-1, M/F-1, or an amended BVA26-040. (TAC paragraph 180.)

Mandamus enforces a clear legal right and a corresponding mandatory duty when no adequate remedy exists. Baron v. Commonwealth Department of Human Services, 169 A.3d 1268, 1273 (Pa. Cmwlth. 2017), aff'd, 194 A.3d 563 (Pa. 2018). The question is not whether Plaintiffs could theoretically ask a court to order BVNA to issue something. It is whether an appeal or mandamus remedy was meaningfully available when the alleged record did not identify what action had occurred, what date controlled, which permit governed, which drawings were operative, what payment would activate, or what decision could meaningfully be placed before a reviewing tribunal.

BVNA also invokes the Pennsylvania Municipalities Planning Code, 53 P.S. §§ 10909.1, 11001-A, 11002-A, as though the challenged BVNA permit administration were simply an adverse municipal zoning decision. It was not. Apollo's UCC structure utilized a UCC board of appeals, and 34 Pa. Code § 403.122(a) permits an owner to appeal a building code official's decision. Plaintiffs do not allege that no UCC appeal mechanism existed; they allege that BVNA never identified one coherent Building Code Official decision and operative record capable of being presented to it.

The mere existence of an administrative tribunal cannot convert an incoherent administrative record into a meaningful avenue of review. A right to appeal is useful only when there is an identifiable decision to appeal. The TAC plausibly alleges that BVNA never supplied one.

**VI. COUNT II (FIRST AMENDMENT RETALIATION) STATES A CLAIM AGAINST BVNA AND KANISH**

BVNA argues that it and Kanish promptly responded and issued a permit in a timely fashion. (ECF 240 at 10-11.) That characterization again assumes the very disputed permit history at issue. It also avoids the specific retaliation allegations against Kanish.

The TAC alleges that Kanish personally instructed Borough staff to deny Scott Brunermer initial access to the permit file, and that access was granted only after Scott presented a written RTKL request. (TAC paragraphs 173, 227.) It alleges that after Plaintiffs questioned an inspector's authority and qualifications, Kanish acknowledged that BVNA's local office did not possess the requested credentials. (TAC paragraph 228.) And it alleges that Kanish proposed Apollo go on "Offense" through citations because Plaintiffs were "always asking for documents," suggesting citations might make the problem "go away." (TAC paragraphs 87, 310.)

The words matter. The communication did not tie the proposed enforcement to a neutral determination that Plaintiffs had violated a code provision. It tied the proposal to their being ‘always asking for documents.’ Plaintiffs’ RTKL requests and related petitions concerning the governmental process regulating their Property constitute protected petitioning activity. See *Campbell v. Pennsylvania School Boards Ass’n*, 972 F.3d 213 (3d Cir. 2020). Under Lauren W., a pattern of antagonism may establish causation. 480 F.3d 259, 267 (3d Cir. 2007). On the pleaded facts, Kanish’s own stated reason supplies direct evidence of the connection pleaded.

A later assertion that a permit was eventually issued does not erase the pleaded denial of access, record obstruction, or proposed citation campaign tied to Plaintiffs' requests for the documents governing their rights.

## VII. COUNT III (CLASS-OF-ONE EQUAL PROTECTION) STATES A CLAIM AGAINST BVNA AND KANISH

BVNA argues the Parker and Earthbound comparators are not similarly situated because

they were located in different municipalities under different local ordinances. (ECF 240 at 11-13.) That argument does not reach the strongest comparator: 809 North Warren Avenue, located in Apollo, processed through the same Apollo-BVNA MPAF and UCC structure, and involving overlapping personnel.

The TAC alleges that 809 North Warren received immediate MPAF approval and temporary occupancy despite unresolved accessibility, restroom, egress, railing, and fire-escape work. Shupe signed the MPAF the day it was submitted; BVNA issued a permit the next day. (TAC paragraphs 134, 248-249.) Plaintiffs allege that their contemporaneous application received neither a signed MPAF, a written denial, nor temporary occupancy. That comparison concerns the same municipal pipeline, the same relevant governmental functions, and overlapping actors.

Parker and Earthbound serve a narrower purpose. They concern BVNA and Kanish's delegated UCC functions-change-of-use classification, inspection, and final-occupancy determination-not Apollo's distinct zoning or vacancy authority. BVNA's Exhibit E confirms that BVNA serves as UCC officials across participating municipalities through the Armstrong UCC Group arrangement. (ECF 240-5 at 4.) The Court need not decide at Rule 12 whether every comparison will survive a complete factual record. It need only decide whether function-matched comparators, pleaded with the officials and functions involved, make intentional differential treatment plausible. They do.

## VIII. COUNT V (SUBSTANTIVE DUE PROCESS) STATES A CLAIM AGAINST BVNA AND KANISH

BVNA characterizes the allegations as ordinary delay, stalling, and administrative friction under Eichenlaub. (ECF 240 at 13-14.) Plaintiffs agree that ordinary delay and ordinary technical disagreement are not enough. That is not what the TAC alleges.

Eichenlaub itself noted the absence of corruption, self-dealing, or interference with independently protected constitutional activity. 385 F.3d at 285-86. The TAC alleges materially more: Kanish's pre-application statement that the building "isn't going to pass inspection anyway"; his proposal to use citations because Plaintiffs were "always asking for documents" so "maybe this could go away"; a classification shift without an identified contemporaneous code-cited basis; an unreconciled record maintained after notice; and repeated review of drawings BVNA had already treated as approved. (TAC paragraphs 39, 87, 148, 152-153, 169-171, 310.)

During the 2020 review, BVNA approved Plaintiffs' drawings. After DLI granted the accessibility variance, Kanish acknowledged that BVNA possessed the approved drawings and variance and identified Apollo's signed MPAF as the 'last piece of the puzzle' before permitting and inspections. He identified no remaining UCC plan-review deficiency. In 2023, BVNA further stated that Smay had signed off on the requested drawing revisions and that no further drawing action was necessary.

Then, according to the TAC, the same technical path was reopened in 2026; Smay changed F-1 to S-1 without a contemporaneous code-cited explanation; BVNA generated or maintained conflicting permit records; and Kanish denied record access and tied enforcement to Plaintiffs' requests for documents. The alleged constitutional vice is therefore not that BVNA processed the application slowly or incorrectly; it is that Kanish expressed the outcome in advance, tied contemplated enforcement to Plaintiffs' petitioning activity, and then participated in administering a process that continued to generate new obstacles and contradictory records after earlier technical requirements had been satisfied or narrowed to identified remaining items. A factfinder may ultimately reject Plaintiffs' inferences. But Rule 12 does not allow the Court to disassemble that alleged course of conduct into isolated clerical events and call the whole thing ordinary.

## IX. COUNT VIII (ENTITY LIABILITY AGAINST BVNA) STATES A CLAIM

BVNA argues Plaintiffs identify no policy or custom and that it has statutory authority to require permitting forms. (ECF 240 at 15-16.) Plaintiffs do not contend BVNA's standardized commercial-submittal policy is facially unconstitutional. They allege that BVNA's own institutional administration of its standardized process caused the injury.

The Third Circuit applies Monell's policy-and-custom framework to a private corporation performing governmental functions under color of state law. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). BVNA's Exhibit F contains its standardized "POLICY GUIDELINES for COMMERCIAL PLAN SUBMITTAL REQUIREMENTS," including Local Municipal Approval. (ECF 240-6 at 5.) The TAC alleges BVNA conditioned permit action on unresolved MPAF signoff while issuing neither stable approval nor a code-cited denial; generated competing M/S-1 and M/F-1 tracks; and, after notice that the competing records shared the same number and date, had its billing operation continue to treat "the permit" as issued and unpaid. (TAC paragraphs 383, 385.) It also alleges that BVNA assigned an inspector whose qualification records the local office did not possess. (TAC paragraph 386.)

Those allegations do not describe a rogue employee who made a single mistake. They describe the alleged workings of BVNA's own permit processing, billing, record administration, and personnel-assignment systems. A company cannot take over a municipality's code-enforcement and permitting functions, standardize the forms and procedures through which property owners must seek permission, and then disclaim responsibility when those same institutional systems allegedly generate a record no one can identify as controlling.

## X. COUNT IX (CIVIL-RIGHTS CONSPIRACY AGAINST KANISH) STATES A CLAIM

BVNA argues Plaintiffs fail to plead an agreement and that the conspiracy claim fails if underlying claims fail. (ECF 240 at 16-17.) The premise fails because the underlying claims are adequately pleaded. The agreement argument fails because the TAC does not rely on a bare allegation that people communicated.

The TAC alleges an in-person, multi-party April 9, 2019, meeting where Kanish, Craft, Troup, and Andreassi were present and articulated complementary positions: Kanish stated BVNA would not consider Plaintiffs' applications until Apollo approved them, while Apollo would not approve until Plaintiffs submitted to a vacancy inspection; Troup stated Apollo would continue treating Plaintiffs as noncompliant and refuse occupancy and change-of-use approval even if Janet were acquitted of the pending vacancy charge. (TAC paragraphs 81-82.)

The April 9, 2019, meeting, as pleaded, was not ordinary coordination over a completed permit file. The arrangement pleaded is circular: BVNA would wait for Apollo; Apollo would wait for a vacancy process; and Plaintiffs would remain unable to obtain the approval required to leave the loop. The TAC then alleges later communications and conduct consistent with that same closed system, including the "back door" and "Offense" communications, the 2026 notation following Scott's Council criticism, Kanish's classification and record-access conduct, and continued maintenance of competing permit tracks after notice. (TAC paragraphs 87, 395, 400.)

At the pleading stage, an agreement may be inferred from participants' communications, roles, timing, complementary conduct, and a shared practical objective. Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178-79 (3d Cir. 2010); Jutrowski v. Township of Riverdale, 904 F.3d 280, 294 & n.15 (3d Cir. 2018). Plaintiffs have alleged more than independent officials each making unrelated technical judgments. They allege facts from which a shared understanding may plausibly be inferred.

**XI. CONCLUSION**

BVNA's Motion asks the Court to declare the permit dispute over because BVNA now points to a document marked M/F-1 and says the only remaining issue is $404.50. But BVNA's own exhibits date that permit March 2, not March 19. They do not identify a March 19 reissuance. They do not reconcile the M/F-1 document with the M/S-1 track. They do not identify which record controls. And they do not answer what payment would activate, what conditions apply, or what decision Plaintiffs could appeal.

BVNA's own Conclusion supplies the practical consequence its Motion attempts to minimize: it states that the permit "will become invalid and the process will have to be restarted on September 2, 2026." (ECF 240 at 18.) BVNA thus asks Plaintiffs to pay now against the disputed record or be returned to the beginning of the process. That does not establish that the dispute has disappeared. It demonstrates why identifying the controlling permit, classification, and drawings before payment matters.

Since 2017, Plaintiffs have sought a usable governmental answer: what is required, what is approved, what remains, and how they may comply. In 2026, BVNA's answer was not a coherent final determination. It was a set of conflicting records and a demand for payment before the records were reconciled.

The Court need not decide today whether Plaintiffs will prove every allegation. It need decide only whether a private contractor administering public code authority may create or maintain an internally conflicting permit record, withhold the identification necessary for a property owner to comply or appeal, and then demand dismissal because the property owner did not treat the conflict as clarity. The TAC plausibly alleges that it may not.

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the BVNA

Defendants' Motion to Dismiss the Third Amended Complaint in its entirety.

Respectfully submitted,

Janet L. Brunermer, Pro Se
719 North Warren Avenue
Apollo, PA 15613
sloppysoap@sloppysoap.com
724-506-2895

Robert Scott Brunermer, Pro Se
514 Hoover Drive
Apollo, PA 15613
sloppysoap@windstream.net
724-624-2716

Dated: August 24, 2026

**CERTIFICATE OF SERVICE**

We certify that on August 24, 2026, we filed the foregoing Brief through the Court's CM/ECF system. The CM/ECF system transmitted a Notice of Electronic Filing to all registered counsel of record, constituting service under Federal Rule of Civil Procedure 5 and section 12.2.1 of the Western District of Pennsylvania Electronic Case Filing Policies and Procedures.

Janet L. Brunermer, Pro Se
719 North Warren Avenue
Apollo, PA 15613
sloppysoap@sloppysoap.com
724-506-2895

Robert Scott Brunermer, Pro Se
514 Hoover Drive
Apollo, PA 15613
sloppysoap@windstream.net
724-624-2716