**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JANET L. BRUNERMER and** | : | |
| **ROBERT SCOTT BRUNERMER,** | : | No. 2:21-cv-00740-MRH |
| Plaintiffs | : | No. 2:21-cv-00856-MRH |
| | : | |
| v. | : | This document relates to: |
| | : | **No. 2:21-cv-00740-MRH** |
| **BOROUGH OF APOLLO et al.,** | : | |
| Defendants. | : | (The Honorable Mark R. Hornak) |
| | : | |
| | : | **ELECTRONICALLY FILED** |
| | : | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' BRIEF IN OPPOSITION TO THE APOLLO BOROUGH DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NOS. 241, 242]**

## I. INTRODUCTION

This is not a case about a property owner refusing to comply, or about a municipality making an ordinary permitting judgment with which an applicant disagreed. It is about what happens when public officials and their delegated code contractor make a lawful answer impossible to obtain, then fault the citizens trapped inside that process for not somehow producing it themselves.

Janet and Scott Brunermer did not ask Apollo to guarantee them a business, exempt them from the law, or give them a special favor. They asked for the ordinary things government is supposed to provide when it regulates a person's property: identify the governing requirements; state whether the use is permitted; identify the controlling plans and permit; tell them what remains to be done; issue a decision that can be obeyed or challenged. For years, they allege, those basic answers did not come.

The Court has already seen the result. In September 2023, after years of dispute over parking and the absence of a definitive answer, this Court called the situation "ludicrous." (Sept.

7, 2023, Tr. at 13-14, ECF No. 182.) The word matters because Plaintiffs were not confronting an ordinary adverse decision. An adverse decision can be appealed. A written denial can be challenged. A condition can be cured. But the TAC alleges a system that repeatedly withheld the thing that makes any of those remedies possible: a coherent governmental decision.

Then, after the Court-directed 2026 process, Apollo placed the word "Approved" on its municipal application. The Borough now asks the Court to treat that word as dispositive. But the alleged record that followed did not produce a usable, coherent UCC disposition. It produced competing M/S-1 and M/F-1 permit versions under the same permit number, project number, and issuance date-without a dated amendment, withdrawal, voiding document, or superseding determination explaining which one controlled. (TAC paragraphs 170-179, 202-205.) Plaintiffs allege they were left unable to know which classification governed, which drawings were operative, what payment would activate, what conditions remained, or what governmental decision they could appeal.

That is the point the Motion avoids. A label is not a decision when the government has not identified what the label means in practice. "Approved" does not tell a property owner which permit controls. It does not identify the approved drawing set. It does not resolve conflicting classifications. It does not state the conditions for occupancy. And it does not create a reviewable Building Code Official disposition when none has been supplied.

The Motion asks the Court to look at the word "Approved," avert its eyes from the contradictory record behind it, and declare the matter finished. At the pleading stage, the Court need not participate in that fiction.

## II. STANDARD OF REVIEW

On a motion to dismiss, the Court must accept as true all well-pled factual allegations and

construe them in the light most favorable to Plaintiffs. Labov v. Lalley, 809 F.2d 220, 221 (3d Cir. 1987). Dismissal is appropriate only where, accepting those allegations as true, Plaintiffs cannot state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Review at this stage is confined to the complaint, its attached exhibits, matters of public record, and undisputedly authentic documents on which the claims are based. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010); Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

That standard matters here. The TAC does not ask the Court to accept Defendants' characterization of the record. It asks the Court to accept Plaintiffs' allegations about what that record actually contains: two competing permits with the same number and date, no identified controlling version, no coherent set of conditions, and no reviewable decision. At Rule 12, those allegations must be read in Plaintiffs' favor.

## III. THE TAC SATISFIES RULE 8

The Apollo Defendants argue the TAC should be dismissed in its entirety because it is 75 pages and 413 paragraphs, and because it recounts events predating 2026. (ECF 242 at 4-5; ECF 241 ¶¶ 4-8.)

Rule 8 can support dismissal of a genuinely prolix pleading, and this Court's own July 9, 2026, Opinion invoked that authority to strike Plaintiffs' prior 199-page, 1,410-paragraph proposed TAC. But the Third Circuit's controlling decision on this precise question establishes that there is no mechanical page-count or paragraph-count threshold; the question is whether the pleading provides fair notice of the claims and their grounds when read in context. Garrett v. Wexford Health, 938 F.3d 69, 92-94 (3d Cir. 2019).

Measured against that standard, the current TAC is not the pleading this Court struck. It is

75 pages and 413 paragraphs-a substantial reduction from the 199-page, 1,410-paragraph proposed TAC rejected in July 2026-organized by claim and defendant, with each Count expressly incorporating only the specific paragraph ranges "relevant to this Count" and expressly distinguishing timely, independently actionable conduct from historical material offered only for background, notice, motive, custom, or causation. (TAC ¶ 33.)

The most direct evidence that the TAC provides fair notice is the Apollo Defendants' own responsive filing: a 22-page brief that identifies, quotes, and substantively attacks every count, every named individual defendant's alleged conduct, and the specific 2026 factual sequence the TAC pleads. (ECF 242 at 1-22.) A party cannot persuasively maintain that it lacks fair notice while demonstrating, in the same filing, a detailed understanding of the pleading it seeks to erase. The TAC gave Apollo enough notice to litigate each claim on the merits; Rule 8 does not require Plaintiffs to omit the factual history necessary to explain why the 2026 events matter.

More fundamentally, Apollo expressly chose not to engage the history it asks the Court to disregard. Its Brief states that Defendants "only summarize Plaintiffs' alleged facts beginning in 2026" and that "[t]he parties' lengthy history dating back to 2017 is not necessary to resolve the present motion." (ECF No. 242 at 2.) But Apollo simultaneously seeks dismissal of claims whose plausibility turns on motive, notice, custom, comparator treatment, agreement, and causation. Those issues cannot be tested by amputating the chronology that gives the 2026 acts meaning. A Rule 12 movant may argue that particular historical allegations are legally irrelevant; it cannot simply omit the pleaded history from its factual presentation and then rely upon the resulting absence of pattern, motive, custom, or agreement. Rule 12 tests the TAC as pleaded, not the abridged chronology Defendants elected to summarize.

## IV. APOLLO'S BLANKET ZHB-FINALITY THEORY DOES NOT DEFEAT COUNTS I

**THROUGH VII**

The Apollo Defendants argue that Counts I-VII are unripe because the Zoning Hearing Board has not issued a final decision, treating all seven Counts as if each rested on a single zoning-finality premise. (ECF 242 at 4-6; ECF 241 ¶¶ 9-14.) They do not. Each Count requires its own analysis.

**Count I (Procedural Due Process)**

Count I does not allege an unfavorable zoning decision Plaintiffs failed to appeal; it alleges that the decisional process itself never produced a decision capable of being appealed. The TAC pleads that Apollo approved the municipal application, that BVNA and Kanish nonetheless generated two irreconcilable permit versions bearing the same number and issuance date, and that neither entity has ever identified which one governs. (TAC ¶¶ 170-179, 202-205). The Supreme Court has clarified that the finality requirement in this context is "relatively modest": once a government's position is definite enough to cause concrete injury, no further administrative exhaustion is required. Pakdel v. City & Cnty. of San Francisco, 594 U.S. 474, 478-80 (2021) (per curiam). Here, by contrast, there is no single governmental position at all for a Zoning Hearing Board to review-the absence of any final, coherent decision is itself the injury Count I alleges. Officials who control the only decision-making process cannot manufacture a ripeness defense by withholding the very decision that would trigger administrative review. Logan v. Zimmerman Brush Co., 455 U.S. 422, 436-37 (1982); Zinermon v. Burch, 494 U.S. 113, 136-39 (1990); Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

**Count II (First Amendment Retaliation)**

Count II does not depend on zoning finality at all. It concerns completed retaliatory acts-

including Troup's January 2026 notation, Tarle's May 2021 stop-work conduct, and Andreassi's May 2021 fence-relocation demand-each of which is a discrete, already-completed injury, not a pending administrative process awaiting a zoning determination. Ripeness, which concerns the fitness of an issue for judicial review before an agency has acted, has no application to a claim about a specific act an agency's officers have already taken.

**Count III (Class-of-One Equal Protection)**

Count III presents a genuinely different finality question, and Plaintiffs address it directly rather than assume it away. Plaintiffs recognize that Taylor Investment, Ltd. v. Upper Darby Township, 983 F.2d 1285, 1291-93 (3d Cir. 1993), applies the finality rule to an as-applied equal-protection claim challenging an initial land-use determination where the local board retains authority to alter that determination. Count III, however, does not ask this Court to decide whether an initial zoning denial should be reversed. It alleges completed differential treatment in identified governmental functions-MPAF signoff, permit classification and finality, corrective-process treatment, and occupancy disposition-compared against specifically pleaded properties administered through overlapping officials and the same administrative structure. (TAC ¶¶ 245-253.) The Apollo Defendants identify no Zoning Hearing Board procedure capable of revisiting or undoing that already-completed differential administration; the disparity, once it occurred, cannot be undone by a future zoning ruling on Plaintiffs' own application.

**Count IV (Void for Vagueness)**

Count IV raises a distinct statutory predicate problem. The Apollo Defendants invoke 53 P.S. section 10909.1(a)(1), which grants the Zoning Hearing Board "exclusive jurisdiction" over substantive challenges to a "land use ordinance." That statutory predicate applies only to a "land

use ordinance" as the Municipalities Planning Code specifically defines that term: "any ordinance or map adopted pursuant to the authority granted in Articles IV, V, VI, and VII" of the MPC. 53 P.S. section 10107. The Apollo Defendants have not established that Ordinance 282-21-the Borough's vacant-and-abandoned-property registration, inspection, waiver, fee, and penalty regime challenged in Count IV-was adopted under those Articles rather than under general police-power or property-maintenance authority. (TAC ¶¶ 274-300.)

The TAC also pleads that Apollo administered its vacancy regime alongside the separate use-and-occupancy requirements of Ordinance 271-16 without supplying an intelligible rule for which status, sequence, cure period, or compliance track controlled the Property. (TAC ¶¶ 45-47, 276-299.) That alleged confusion is not incidental. It is the mechanism through which Plaintiffs allege the Borough kept their Property under continuing enforcement exposure without a definite path toward compliance or removal from that status.

**Count V (Substantive Due Process)**

Count V likewise does not seek federal appellate review of an adverse zoning determination. It alleges deliberate interference with and manipulation of the permitting process for reasons unrelated to legitimate land-use merits-self-interest, predetermination, retaliatory enforcement, and coordinated preservation of administrative nonfinality. (TAC ¶¶ 304-317.) The Third Circuit has expressly distinguished this type of obstructive-course-of-conduct claim from an ordinary challenge to an unreviewed permit decision and has held such a claim ripe without a further administrative appeal-including where the permit outcome is ultimately favorable. Blanche Road Corp. v. Bensalem Township, 57 F.3d 253, 267-68 (3d Cir. 1995); County Concrete Corp. v. Township of Roxbury, 442 F.3d 159, 164-68 (3d Cir. 2006).

**Counts VI and VII**

Count VI is governed by Pakdel's finality standard directly and is addressed in Section VIII.E. Count VII concerns a completed taking-the November 1, 2023, Declaration of Taking-for which Knick v. Township of Scott, 588 U.S. 180, 192-94 (2019), confirms no state-exhaustion prerequisite exists before a property owner may bring a federal just-compensation claim.

To the extent Apollo alternatively seeks dismissal for lack of Article III standing or constitutional ripeness, such a jurisdictional dismissal could not operate as an adjudication on the merits with prejudice. *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155–56 (3d Cir. 1997); see also *Merritts v. Richards*, 62 F.4th 764, 772 n.4 (3d Cir. 2023).

## V. THE APOLLO INDIVIDUAL DEFENDANTS' QUALIFIED-IMMUNITY AND PERSONAL-INVOLVEMENT ARGUMENTS REQUIRE THE DEFENDANT-SPECIFIC ANALYSIS THE MOTION ITSELF OMITS

The Apollo Defendants seek qualified immunity for Andreassi, McDermott, Tarle, Shupe, Troup, and Craft-the six individual defendants who are movants on this motion-asserting collectively that "Plaintiffs have not alleged facts supporting a violation of a clearly established constitutional right on the part of the individual Defendants," and separately argue these same defendants lack the "personal involvement" Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988), requires. (ECF 242 at 6-8; ECF 241 ¶¶ 15-20.)

Both arguments fail for the same reason. Qualified immunity requires a specific context, a specific right, and a specific official's conduct. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Mullenix v. Luna, 577 U.S. 7, 12 (2015). It is a defense the movants bear the burden of establishing. Dismissal at the pleading stage is appropriate only where entitlement to immunity is apparent on the face of the complaint as to each defendant. Thomas v. Independence Twp., 463

F.3d 285, 291 (3d Cir. 2006). Rode's personal-involvement requirement is likewise satisfied by allegations of personal direction or actual knowledge and acquiescence. 845 F.2d at 1207.

The Motion does not perform that work. It offers a collective request for immunity in a case where the TAC identifies individual acts: Troup's day-after-Council notation; Shupe's contemporaneous treatment of the 809 North Warren MPAF; McDermott's continued vacancy administration after a written challenge; Andreassi's MPAF, permit, records, and fence-related conduct; Tarle's access conditions and stop-work directive while wearing an Apollo Police shirt; and Craft's parking/MPAF participation. The motion's broad denial of personal involvement cannot make those defendant-specific allegations disappear.

There is no freestanding constitutional "right to be free from conspiracy"; qualified immunity as to Count IX turns on whether the specific underlying constitutional right the alleged conspiracy targeted was clearly established, not on the conspiracy label itself. This does not change the analysis, since each defendant's alleged participation is tied to an identified underlying right rather than to conspiracy as a freestanding theory.

Because the present motion does not undertake the required defendant-specific showing, immunity is not established on the face of the TAC.

Craft presents a separate threshold problem. The Motion seeks qualified immunity for him alongside Borough officials without addressing whether a privately retained consulting engineer may invoke qualified immunity under the circumstances alleged here. See Richardson v. McKnight, 521 U.S. 399, 412–13 (1997); Filarsky v. Delia, 566 U.S. 377, 393–94 (2012). That inquiry turns on considerations the Motion does not develop, including the nature and duration of Craft’s contractual role, governmental supervision, market pressures, and any historical analogue for immunity. On the present Rule 12 record, Apollo has not established Craft’s threshold

entitlement to qualified immunity; dismissal on that ground is therefore premature.

## VI. THE TAC ADEQUATELY PLEADS MONELL LIABILITY AGAINST THE BOROUGH OF APOLLO (COUNT VIII)

The Apollo Defendants argue Plaintiffs "fail to identify a policy or custom" and instead describe only "an isolated dispute concerning Plaintiffs' own permit application." (ECF 242 at 8-9; ECF 241 ¶¶ 21-23.) The TAC pleads more than an isolated dispute; it pleads a system of the Borough's own creation, attributable to Apollo under settled Pennsylvania municipal law. No single lower-level actor, standing alone, plausibly accounts for years of unresolved municipal approval, vacancy administration, MPAF gatekeeping, records disputes, delegated UCC administration, and repeated failure to produce a stable reviewable endpoint after notice to Borough policymakers. The alleged conduct crossed successive Borough officials and functions, including zoning, records administration, the Borough Solicitor, Council, engineering, and Apollo's delegated UCC administrator.

Under the Pennsylvania Borough Code, "[t]he powers of the borough shall be vested in the council," 8 Pa.C.S. section 1202, and Council holds the statutory power to create offices and appoint municipal officers. 8 Pa.C.S. section 1005(1). The narrower and sufficient proposition is that Council's own structural choices-the ordinances it enacted, the offices it created and staffed, its retention of the MPAF gatekeeping structure across years of administration, and its alleged ratification of that structure after repeated notice-are municipal acts directly attributable to Apollo itself.

Apollo's own contemporaneous conduct on a function-matched project makes the asserted "isolated dispute" characterization particularly untenable. The TAC alleges that Shupe signed Apollo's MPAF for the 809 North Warren project the same day it was submitted, and BVNA issued

a permit the next day, despite unresolved accessibility, restroom, egress, railing, and fire-escape work at that property. (TAC ¶¶ 134, 248-249.) Plaintiffs allege that for their Property the same institutional system produced years of divided authority, incomplete signoff, conflicting records, and no stable, reviewable endpoint.

The point is not that every property must be treated identically or that every project presents the same facts. It is that Apollo's alleged ability to produce immediate, coordinated, and usable action when it chooses makes it implausible to dismiss the prolonged nonresolution alleged here as institutional incapacity or innocent administrative drift. A municipality capable of moving an application from submission to signed MPAF to permit issuance in a day cannot lightly explain years of fragmented, contradictory, and nonfinal administration toward another property owner as unavoidable bureaucracy. The TAC permits the inference that this was not inability. It was choice.

The TAC also pleads ratification through actual notice to Council and other final policymakers over an extended period-written objections, Council appearances, RTKL and OOR proceedings, DLI communications, the September 2023 status conference, and Scott's January 2026 public presentation-followed by continuation of the identical divided-nonfinality structure in the 2026 process. (TAC ¶¶ 376, 379.) Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986); City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

Finally, the TAC pleads that Apollo treated the MPAF as a mandatory gate without enacted standards or a deadline; permitted Troup to combine zoning, vacancy, signoff, records, and compliance authority over Plaintiffs' Property while she held a neighboring commercial interest without disclosure or recusal; and maintained a fragmented records structure in which the operative permit file was split across offices and private contractor records. (TAC ¶¶ 375, 378, 388-389.) Those allegations describe a municipal structure plausibly capable of producing exactly the kind

of unresolved, unreviewable process Plaintiffs allege they endured.

## VII. THE STATUTE OF LIMITATIONS BARS ONLY THOSE DAMAGES THEORIES THAT REST EXCLUSIVELY ON UNTIMELY, UNPRESERVED CONDUCT

The Apollo Defendants correctly note that the limitations period for section 1983 claims is two years. Lake v. Arnold, 232 F.3d 360, 368-69 (3d Cir. 2000). But their argument treats every factual allegation predating the limitations window as though it must either independently generate damages today or disappear entirely from the pleading. That is not the law.

Discrete, independently actionable acts falling outside the limitations period are not resurrected merely by inclusion in a later pleading. But historical conduct remains fully admissible and properly pled as evidence of motive, notice, agreement, custom, and the context necessary to interpret later, timely conduct. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112-13 (2002). The TAC expressly follows that distinction. Paragraph 33 identifies historical material offered for background, notice, motive, custom, causation, or comparator context, while each Count identifies the allegations relevant to it.

Where a specific damages theory rests on conduct predating the two-year window, the issue is relation back under Rule 15(c)(1)(B): whether the amendment arose out of the conduct, transaction, or occurrence set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B); Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004); Glover v. FDIC, 698 F.3d 139, 146 (3d Cir. 2012). That inquiry is act-specific and defendant-specific. It cannot be decided by globally labeling the entire history of the Property "stale."

## VIII. COUNT-SPECIFIC RESPONSES

### A. Counts I and V (Procedural and Substantive Due Process)

The Apollo Defendants argue Plaintiffs have not pled a deprivation because they "admit"

the 2026 permit application was approved and that they received the desired M/F-1 designation. (ECF No. 242 at 10-12; ECF No. 241 ¶¶ 28-30.) That argument collapses Apollo's municipal approval into BVNA's separate UCC disposition and ignores the history pleaded in the TAC.

Plaintiffs submitted substantially the same retail-and-artisanal-production use to Apollo in February 2019. Andreassi, acting on behalf of the Borough, expressly described the proposed use as a "Retail Storefront facility to manufacture artisanal soap, shampoo, lotions," stated that the use "appears to be permitted within the Borough confines," and directed Plaintiffs into BVNA's change-of-use process. Yet Apollo marked that application neither approved nor denied, and the municipal-prior-approval form remained unsigned. (TAC Ex. 3, ECF No. 231-3 at 1-6.)

The renewed 2026 process therefore did not introduce some newly identifiable use that finally permitted Apollo to act. Apollo approved its municipal portion of substantially the same proposed commercial use, but that approval still did not resolve the separate UCC process. The uncertainty was not limited to BVNA's permit classifications: Apollo's own “Approved” application carried Troup's unexplained handwritten notation, “Production appurtenant to primary retail use,” without identifying whether it was a condition, a restriction, or merely commentary. Apollo cannot have it both ways: if the notation had legal effect, Plaintiffs were entitled to know its authority, scope, and review route; if it had no legal effect, its unexplained insertion immediately after protected criticism is even harder to justify as ordinary permit administration. Defendants left unresolved two competing permit versions—M/S-1 and M/F-1—bearing the same permit number, project number, and issuance date, without identifying one operative permit, reviewed drawing set, classification, remaining conditions, or appealable Building Code Official disposition. (TAC ¶¶ 170–179, 202–205.) “Plaintiffs could not know what payment would activate, what standards governed, or what action could be appealed.” (TAC ¶ 204.)

Defendants cannot leave Plaintiffs with two facially conflicting permit tracks, no identified operative record, no final written denial, no final inspection determination, and no reviewable disposition-then invoke that manufactured uncertainty as the reason Plaintiffs have no claim. The inability to identify what governs, what compliance requires, or what may be appealed is not a technical pleading defect. It is the procedural injury Plaintiffs allege.

This is not a claim to an unconditional right to a permit. It is a claim that Defendants made nonfinality function as the decision itself: no definitive denial to challenge, no definitive approval to rely upon, and no intelligible path by which Plaintiffs could bring their Property into undisputed compliance. As the TAC alleges, "the process itself" became "the means of deprivation." (TAC ¶ 214.)

As to substantive due process, the TAC does not aggregate ordinary delay and label it conscience-shocking. The 2019 record matters: Apollo's own Solicitor had already stated that Plaintiffs' proposed retail-and-artisanal-production use "appears to be permitted within the Borough confines." (ECF No. 231-3 at 6.) Yet the TAC alleges that the process thereafter remained unresolved while Troup exercised zoning, vacancy, and permit-record authority over Plaintiffs' Property despite operating a neighboring commercial interest at immediately adjacent 725 North Warren Avenue, without disclosure or recusal, and directed her customers to use Plaintiffs' parking while simultaneously pressing Council to require Plaintiffs to remove or relocate their fence. (TAC ¶¶ 150-151, 311-313.)

Combined with Kanish's alleged predetermination-stating before any completed application existed that "this building isn't going to pass inspection anyway" (TAC ¶ 39), and later proposing that Apollo go on "Offense" through citations so "maybe this could go away" (TAC ¶¶ 87, 310)-the TAC plausibly alleges targeted, self-interested interference for reasons unrelated to

ordinary land-use merits, not bureaucratic delay alone.

What removes these allegations from ordinary land-use friction is not their duration alone, but their alleged purpose and structure. Plaintiffs allege that officials who possessed authority to move the process toward a definite result instead exercised that authority in a process already marked by alleged predetermination, while one official allegedly held a neighboring commercial interest and another expressly proposed enforcement because Plaintiffs were "always asking for documents." The TAC further alleges that even after technical issues had been resolved or narrowed, Defendants repeatedly preserved administrative nonfinality rather than issue a determination Plaintiffs could obey or challenge. Taken together, those allegations permit an inference of governmental power used not merely badly, but for self-interested, retaliatory, and obstructionist purposes—the features *Eichenlaub* itself distinguished from ordinary zoning hostility and delay. *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 285–86 (3d Cir. 2004).

**B. Count II (First Amendment Retaliation)**

The Apollo Defendants move to dismiss Count II as to the Borough, Troup, Shupe, McDermott, Andreassi, and Tarle, arguing that the alleged retaliatory conduct is either too vague or falls outside the two-year limitations period. (ECF 242 at 12-14; ECF 241 ¶ 31.)

A First Amendment retaliation claim requires protected activity, retaliatory action sufficient to deter a person of ordinary firmness, and a causal connection between the two. Thomas v. Independence Township, 463 F.3d 285, 296 (3d Cir. 2006). Causation may be established through unusually suggestive temporal proximity, a pattern of antagonism, or the record as a whole. Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

**Troup.** Scott's January 27, 2026, public criticism before the Borough Council was

protected petitioning activity known to Troup. The following day, Troup added the unexplained use-limiting notation challenged in Count II. (TAC ¶¶ 164-165, 223, 235.) The relevant point is not merely that the notation appeared. It is that the TAC alleges a property owner spoke publicly about the Borough's treatment of his Property, and the following day the official administering the process added a new use-limiting notation to the application. That sequence is concrete. It is dated. It is personal. And at Rule 12, it must be read in Plaintiffs' favor.

Apollo attempts to neutralize that allegation by asserting that the handwritten notation did not affect the approval. But that characterization does not answer the pleaded question. The notation was not applicant-supplied; Apollo identified Troup as its author; it was added to an otherwise approved application; and Apollo identified no ordinance provision, factual finding, formal condition, or review procedure explaining its legal effect. If the notation truly had no effect, the Motion does not explain why an official added a project-specific limitation to the approved use at all. At the pleading stage, the Court must draw the reasonable inference in Plaintiffs' favor, particularly where the notation appeared the day after Scott's protected Council criticism.

**Tarle.** The TAC plausibly pleads causation apart from temporal proximity. Before the May 2021 fence incident, Plaintiffs had pursued records requests, litigation, public criticism, and other petitioning activity known to Tarle. (TAC ¶ 183.) Tarle had also personally participated in the ongoing dispute by imposing conditions on records access and routing Plaintiffs' objections through Borough counsel. (TAC ¶¶ 117–118.) He then appeared at the Property in an Apollo Police shirt and directed Plaintiffs' contractors to stop work without a written violation or stop-work order. (TAC ¶¶ 184–186.) Under *Lauren W.*, causation may be inferred from a pattern of antagonism and the record as a whole, not temporal proximity alone. 480 F.3d at 267. The same May 2021 occurrence was pleaded against Tarle in the Original Complaint, including that he instructed

Plaintiffs' contractors to stop building the fence, and was repeated in the Second Amended Complaint. (No. 2:21-cv-00740, ECF No. 1 ¶¶ 33–40; ECF No. 120 ¶¶ 176–190.) The present retaliation theory therefore arises from conduct and an occurrence set out in the original pleading and relates back under Rule 15(c)(1)(B). *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004).

**Andreassi.** Count II does not depend on treating Andreassi's 2019 "back door" characterization, or his earlier review of Plaintiffs' permit materials, as independently actionable retaliation. Rather, those events establish knowledge, administrative involvement, and motive. The TAC then pleads a separate materially adverse occurrence: after the May 2021 fence-site confrontation, Apollo, through Andreassi, demanded that Plaintiffs remove or relocate the fence. (TAC ¶ 233.) That occurrence was pleaded before limitations could become an issue in the June 7, 2021, Original Complaint. (No. 2:21-cv-00740, ECF No. 1 ¶ 50.) Apollo's merits section supplies no defendant-specific analysis showing why Andreassi's pleaded non-advocacy conduct fails as a matter of law.

Plaintiffs do not contend on the present record that Count II independently supports damages against Shupe based specifically on her September 8, 2021, attestation or against McDermott based on discrete 2018 vacancy-administration acts. That limited non-opposition does not concede the accuracy or evidentiary significance of Shupe’s attestation, and the historical conduct of both Shupe and McDermott remains relevant, as pleaded, to motive, notice, knowledge, the pattern of antagonism, municipal policy or custom, and Count IX, consistent with *Morgan.*

Count II accordingly survives as pleaded against the Borough, Troup, Tarle, and Andreassi.

### C. Count III (Class-of-One Equal Protection)

The Apollo Defendants argue the comparators are not "similarly situated in all relevant

respects" under Wilcher v. Postmaster General, 441 Fed. App'x 879, 882 (3d Cir. 2011), and Stradford, 53 F.4th 67, 74 (3d Cir. 2022). The TAC expressly frames each comparator as function-specific rather than globally identical: "[e]ach comparison concerns the governmental function, responsible official, regulatory posture, and treatment material to that comparison." (TAC ¶ 245.)

The 809 North Warren comparator matches on the specific function of MPAF signoff by the same official, Shupe, for a change-of-occupancy application, through the same Apollo-BVNA structure, differing in the alleged outcome: same-day approval versus years of nonaction. (TAC ¶¶ 248-249.) Parker/Holy Sundae matches on BVNA/Kanish's change-of-use classification and final-occupancy determination. Earthbound matches on Kanish's enforcement discretion for an operating business in a former church absent a UCC permit. (TAC ¶¶ 250-253.) These are function-matched comparisons; whether their factual distinctions justify different treatment cannot be decided by simply declaring them incoherent at the pleading stage.

**D. Count IV (Void for Vagueness) - Standing**

The Apollo Defendants argue Plaintiffs lack Article III standing because they have not alleged a "concrete and particularized threat" of future enforcement. (ECF 242 at 15-16; ECF 241 ¶¶ 34-39.) A pre-enforcement challenge satisfies injury in fact where the plaintiff alleges an intention to engage in conduct arguably affected with a constitutional interest but proscribed by the challenged provision, and a credible threat that the provision will be enforced against that conduct. Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158-65 (2014).

The TAC satisfies that standard directly: Plaintiffs "still own, maintain, market, and seek occupancy or disposition" of the Property, "occupancy remains disputed," and Apollo has neither permanently ended vacancy status nor disclaimed renewed registration, inspection, fees, citations, or penalties. (TAC ¶ 297.) Plaintiffs do not seek reversal of any prior conviction or damages arising

solely from it. They seek prospective declaratory and injunctive relief against future enforcement under a regime that Apollo allegedly has never permanently disclaimed.

A temporary, non-binding suspension is not a permanent resolution. A defendant who voluntarily suspends challenged conduct bears the formidable burden of showing the conduct cannot reasonably be expected to recur. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189-90 (2000); FBI v. Fikre, 601 U.S. 234, 241-43 (2024). Apollo has not met that burden by pointing to a temporary pause while retaining the asserted authority, the unresolved status, and the ability to renew enforcement.

**E. Count VI (Regulatory Taking)**

The Apollo Defendants argue that because Plaintiffs "possess an approved permit with the M/F-1 designation," "there is no taking here," relying on Pace Resources, Inc. v. Shrewsbury Township, 808 F.2d 1023, 1033 (3d Cir. 1987). (ECF 242 at 16-17; ECF 241 ¶¶ 40-42.) But the existence of a document bearing a favorable designation does not settle the claim where the TAC alleges the document was never made into an identified, operative, usable disposition.

Nor does Count VI fail for lack of finality. Pakdel asks whether the government has reached a sufficiently definite position causing concrete injury; it does not require exhaustion of every administrative procedure. 594 U.S. at 478–80. Here, the permit record remained internally unreconciled, but the restraint did not: Defendants' operative position was that Plaintiffs could not lawfully occupy or use the Property unless they paid the demanded fee, proceeded under the permit regime Defendants were administering, submitted to inspection, and satisfied the conditions imposed upon that use. The uncertainty concerned which permit, drawings, classification, and conditions governed—not whether Defendants continued to restrain occupancy and use. At the pleading stage, that sufficiently alleges the "relatively modest" finality Pakdel requires.

Apollo's near-total-destruction formulation does not displace the governing Penn Central framework for the non-categorical regulatory-taking claim Plaintiffs actually plead: economic impact, interference with distinct investment-backed expectations, and the character of the governmental action. Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978); Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 538-40 (2005); Murr v. Wisconsin, 582 U.S. 383, 393-408 (2017).

At the January 25, 2022, proceedings, this Court rejected the defense formulation that a regulatory taking necessarily requires stripping a property of "every plausible use." (Tr. of Jan. 25, 2022, Proceedings at 89.) Count VI is a Penn Central claim, not a Lucas total-deprivation claim. The existence of some residual value or theoretical use is evidence in the Penn Central balance; it is not an automatic Rule 12 bar.

**F. Count VII (Formal Physical Taking) - Younger Abstention**

The Apollo Defendants argue this Court should abstain under Younger v. Harris, 401 U.S. 37 (1971), applying the three Middlesex factors. The Motion never reaches the threshold question required before those factors are considered: Younger abstention is available only within three exceptional categories-ongoing state criminal prosecutions, civil enforcement proceedings akin to criminal prosecutions, and civil proceedings involving orders uniquely in furtherance of a state court's judicial functions. Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 77-82 (2013).

The Third Circuit has expressly held that, after Sprint, the Middlesex factors are not a free-standing test to be applied before first identifying which Sprint category the state proceeding occupies. ACRA Turf Club, LLC v. Zanzuccki, 748 F.3d 127, 138 (3d Cir. 2014). Apollo has not shown that the pending state compensation proceeding falls within any of Sprint's exceptional categories.

Even if the threshold Sprint inquiry were satisfied, Knick holds that a property owner is not required to exhaust state compensation proceedings before presenting a federal Fifth Amendment just-compensation claim. 588 U.S. 180, 185, 189-94 (2019). Count VII accepts the state court's ruling on the validity of the taking, seeks no return of the condemned strip, and gives express dollar-for-dollar credit for the $3,275 already tendered and any later state compensation award for the same interest and injury. (TAC ¶¶ 159, 367, 369; Prayer for Relief paragraph C.) There is no request for a double recovery.

**G. Count IX (Civil-Rights Conspiracy)**

The Apollo Defendants argue no agreement is pled and that alleged conduct by McDermott, Shupe, Craft, Andreassi, and Tarle is stale. (ECF 242 at 18-19; ECF 241 ¶¶ 46-50.) The TAC alleges a specific shared objective: preserving unresolved administrative status while avoiding a reviewable determination. (TAC ¶ 393.) It ties each named defendant to a specific overt act said to advance that purpose. At the pleading stage, a plausible agreement may be inferred from communications, timing, complementary roles, and coordinated conduct; it need not be documented by an express written promise. Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178-79 (3d Cir. 2010).

A civil conspiracy claim does not require every named participant personally to commit the overt act causing injury. Where an agreement is plausibly pled, liability may attach based on an overt act committed by a participant in furtherance of it. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 294 & n.15 (3d Cir. 2018). The limitations period runs separately from each overt act causing damage; a later act does not revive recovery for an independently stale injury. Kost v. Kozakiewicz, 1 F.3d 176, 190-91 (3d Cir. 1993). The TAC follows that distinction. It uses older conduct as evidence of formation, participants, motive, and scope, while relying on preserved overt

acts for current liability.

**H. Count X (Tortious Interference with Prospective Contractual Relations)**

The Apollo Defendants argue no causal link connects Troup's statement to the Walker transaction's failure. (ECF 242 at 20-21; ECF 241 ¶¶ 51-53.) The precise record should be stated carefully. Realtor Lori Weig-Tamasy reported to Plaintiffs that Troup told her the back deck was "definitely not approved." (TAC ¶ 193.) Troup's own underlying email, separately pled, stated that "the rear exit remained unapproved"-while the TAC also alleges Apollo had previously issued a rear-deck permit. (TAC ¶ 194.) Troup knew of that permit and identified no revocation, failed inspection, violation notice, or written denial establishing the adverse status communicated to the realtor. (TAC ¶¶ 314, 408.)

Apollo's assertion that Troup was merely "acting in connection with her municipal responsibilities" does not establish privilege or justification as a matter of law. The TAC alleges that Troup knew Apollo had issued the rear-deck permit, identified no revocation, failed inspection, violation notice, stop-work order, or written denial, yet communicated an adverse and materially incomplete official status concerning that same work to a realtor conducting active buyer due diligence. (TAC ¶¶ 193–194, 314, 408–409.) It further alleges that she did so while possessing the neighboring commercial interest described elsewhere in the TAC. Pennsylvania's interference inquiry examines purpose, justification, and the circumstances surrounding the conduct; Apollo cannot establish those disputed matters at Rule 12 merely by labeling Troup's conduct "municipal."

The difference is not wordplay. A municipal official's statement to a prospective purchaser's representative about code compliance carries weight precisely because it is municipal. When a buyer is deciding what risk to price into a property, an incomplete official account can

become the account that matters. The TAC alleges that "CODE COMPLIANCE-Rear Deck" appeared among the stated bases for Walker's $155,000 offer. (TAC ¶ 406.)

Plaintiffs do not allege that one statement alone explains every term of the transaction or every concern the potential purchaser identified. They allege something narrower and more human: while they attempted to market their Property, the official who held authority over its regulatory status allegedly supplied adverse and incomplete information about a condition directly identified in the buyer's valuation. A property owner cannot realistically shrug off that kind of intervention as inconsequential.

The governing standard requires a plausibly pled "reasonable likelihood" that the prospective relationship would have occurred but for the interference. Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212-13 (3d Cir. 2009); Glenn v. Point Park College, 441 Pa. 474, 480-84, 272 A.2d 895, 898-900 (1971). The offer's express identification of "CODE COMPLIANCE-Rear Deck" as one of the stated bases for its number, the challenged municipal communication that preceded and addressed that same subject, Plaintiffs' counteroffer, and continued negotiations plausibly plead the required reasonable-likelihood and but-for inference. Ultimate causation is a factual question for a developed record, not one the pleading forecloses.

**IX. CONCLUSION**

Apollo's Motion asks for dismissal with prejudice. It asks the Court to end these claims before Plaintiffs can obtain discovery into the competing permit records, the MPAF process, the officials' communications, the municipal record structure, the comparators, the treatment of other properties, the basis for the 2026 notation, and the communications that Plaintiffs allege affected the sale.

It asks the Court to do so by treating unresolved records as resolved, by treating the absence

of a reviewable decision as a failure by Plaintiffs to seek review, and by treating years of requests for a clear governmental answer as a defect in Plaintiffs rather than a question about the government's conduct.

The Court does not have to decide today whether every allegation will ultimately be proved. It does not have to decide whether every official acted with the intent Plaintiffs allege. It need decide only whether the TAC plausibly alleges that Janet and Scott Brunermer were made to live for years under a regulatory process that did not give them a clear way to comply, operate, appeal, sell, or move forward-and that when they persisted in asking for those ordinary answers, the process became more restrictive, more fragmented, and less intelligible.

The TAC plausibly alleges exactly that. The Motion should therefore be denied, except that Plaintiffs do not oppose dismissal of Count II as an independent damages claim against Deanna Shupe and Cynthia McDermott only. That limited concession does not affect their continued inclusion in Count IX, and Plaintiffs oppose dismissal of Count II as to the Borough of Apollo, Brenda Troup, Mark Tarle, and Scott Andreassi.

Respectfully submitted,

Janet L. Brunermer, Pro Se
719 North Warren Avenue
Apollo, PA 15613
sloppysoap@sloppysoap.com
724-506-2895

Robert Scott Brunermer, Pro Se
514 Hoover Drive
Apollo, PA 15613
sloppysoap@windstream.net
724-624-2716

Dated: August 24, 2026

**CERTIFICATE OF SERVICE**

We certify that on August 24, 2026, we filed the foregoing Brief through the Court's CM/ECF system. The CM/ECF system transmitted a Notice of Electronic Filing to all registered counsel of record, constituting service under Federal Rule of Civil Procedure 5 and section 12.2.1 of the Western District of Pennsylvania Electronic Case Filing Policies and Procedures.

Janet L. Brunermer, Pro Se
719 North Warren Avenue
Apollo, PA 15613
sloppysoap@sloppysoap.com
724-506-2895

Robert Scott Brunermer, Pro Se
514 Hoover Drive
Apollo, PA 15613
sloppysoap@windstream.net
724-624-2716